Sharon Lee RUSSELL, Appellant
(Defendant),

v.

Richard L. RUSSELL, Appellee
(Plaintiff).

No. 97–2.

Supreme Court of Wyoming.

Dec. 5, 1997.

James A. Eddington, Torrington, for Appellant.

Donald E. Miller of Graves, Miller & Kingston, P.C., Cheyenne, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellant Sharon Russell (the mother) appeals from the order which modified the custody of the parties' minor children in favor of Appellee Richard Russell (the father).

We affirm.

## ISSUES

The mother presents three issues for our review:

1. Does interference with visitation constitute a material change of circumstances that is sufficient to support a change of custody under the circumstances of this case?

2. Did the trial court abuse its discretion by determining that custody should be changed without receiving evidence regarding the best interests of the children?

3. Did the trial court abuse its discretion by ordering [the mother] to pay attorney fees and Guardian Ad Litem fees that were not a result of the trial on the [father's] Petition to Modify and were offered without any evidence of reasonableness?

## FACTS

The trial court granted the mother and the father a divorce on January 13, 1995. It awarded primary custody of the two minor children to the mother, giving the father standard visitation rights. On August 8, 1995, the father asked the trial court to order the mother to show cause why she should not be held in contempt of court and moved for temporary custody, alleging that the mother had taken the children from his home during his summer visitation and had not permitted him to have contact with them since that time. The father amended his petition on August 16, 1995, asking that custody be changed to him. The trial court appointed a guardian *ad litem* for the children. Several hearings were scheduled and then continued at the mother's request. Ultimately, the mother requested that the hearing which had been set for June 18, 1996, be continued. The father objected, arguing that he was planning to take the children to Disneyland in June. He also requested that, if the trial court granted the continuance, he be given immediate custody of the children pending the final order on the petition to change custody. The trial court held a hearing and issued a temporary order on June 10, 1996, which modified the father's visitation rights. The trial court found that the father had "been denied regular scheduled visitation during the prior nine months and it [was] in the best interest of the children that [the father's] visitation continue during the pendency of this matter."

The mother refused to obey the temporary order. On June 12, 1996, the father again asked the trial court to order the mother to show cause why she should not be held in contempt of court. The trial court held a hearing and granted temporary custody to the father pending the outcome of the petition for a change of custody. When the mother refused to obey this order, the father filed a third petition for an order to show cause in an attempt to enforce the temporary custody order. The trial court held another hearing and issued a temporary order which gave the father custody of the children and the mother standard visitation rights. It ordered the mother to have the children ready to go with their father at six o'clock in the evening on the following Sunday.

A trial was held on October 8, 1996. At the end of the father's case in chief, the trial court stated that the evidence proved

far beyond the preponderance, that even if you set aside specific dates on which there is conflicting testimony concerning visitation that was denied, the extent in which [the mother] actively or only passively denied it, the efforts that [the father] did or didn't make to attain his visitation, even if you set that all aside, I think it's clear there's been amply demonstrated a repeated, substantial, and willful interference by [the mother] with [the father's] parental

rights with respect to [the son] and [the daughter]. It's just a tragic situation. It is my view that there has been more than demonstrated here a substantial change in material circumstance.

The trial court pondered whether, given the evidence which had been introduced that far, it would be in the children's best interest to change custody. The trial court stated: "Tremendously important and overriding all of this is the proposition that children and parents are reciprocally entitled to a parent-child relationship that is not hindered[ or] interfered with." It noted that this factor related directly to whether or not a change of custody was in the children's best interest.

The mother declined the opportunity to present evidence, and the trial court took the case under advisement. Relying upon *Henson v. Henson*, 384 P.2d 721, 723 (Wyo.1963), for the proposition that changing custody "sometimes must be used to enforce, not only the right of the other parent to association with the child, but also to enforce the right of the child to association with both of the parents," the trial court modified the divorce decree. It awarded primary custody of the children to the father and gave the mother visitation rights. It also found that the father was the aggrieved party and that he was experiencing difficult financial circumstances due, at least in part, to the litigation costs and ordered the mother to pay one-half of the guardian *ad litem* fees and one-half of the father's legal fees. The mother appeals to this Court.

## DISCUSSION

### A. Change of Custody

█ The mother contends that interference with visitation does not constitute a material change of circumstances sufficient to support a change of custody. She also claims that the trial court failed to take the children's best interest into consideration in deciding to give the father primary custody.

█ We use an abuse of discretion standard when we review a trial court's decision to modify child custody arrangements. *Ready v. Ready*, 906 P.2d 382, 384 (Wyo. 1995). In determining whether the trial court abused its discretion, we examine the record to see whether the trial court could have reasonably concluded from the evidence that such a material or substantial change in circumstances occurred. 906 P.2d at 384–85; *DJG v. MAP*, 883 P.2d 946, 947 (Wyo.1994). The party who is seeking a modification of the child custody provisions of a divorce decree has the burden of showing that a change in circumstances which affects the child's welfare occurred after the initial decree was entered, that the change warrants a modification of the decree, and that the modification will be in the child's best interest. *Ready*, 906 P.2d at 384.

Pursuant to the trial court's standard visitation order which was attached to the divorce decree, the father's visitation schedule included each weekend in which Friday was an even-numbered date, his birthday, Father's Day, the children's birthdays in even-numbered years, alternating holidays, and a minimum of two months during each summer. When the children were with their father during the summers, the mother had visitation rights on each weekend in which Friday was an odd-numbered date.

Although the parties gave conflicting testimony with regard to whether the father was denied his visitation rights, the record reveals that the father was not able to exercise his rights because the mother denied them or otherwise interfered with them. An example of this interference is the incident which occurred while the children were visiting their father in the summer of 1995. The mother appeared at his home on the morning of Thursday, July 20th, and took the children without the father's knowledge or permission while he was at work. The father testified that he and the mother had previously agreed that the children would go with their mother after they attended their grandfather's birthday party in the evening of July 20th. The interference continued when the mother failed to return the children to the father at six o'clock in the evening on Sunday, July 23, 1995, pursuant to the standard visitation order. The father testified that he made numerous attempts to retrieve the children from the mother in order to complete his summer visitation but that each attempt was unsuccessful.

The father did not have a visitation with the children from July 20th until they visited him on September 8, 1995. After this visit, the father had erratic visitations with only his son until June 14, 1996, when he was allowed to have a visitation with both children.

During the father's visitation, the mother left recorded telephone messages for the children in which she made derogatory comments about the father. Furthermore, the son's school teachers testified that the mother severely restricted their ability to communicate with the father about his children and limited the father's involvement with the children. In its October 10, 1996, decision letter, the trial court observed:

> Separate from the interference with visitation, there has been a continuing, seemingly purposeful undermining of the relationship between the father and the children. This is exemplified by statements to the children denigrating the father and his wife; that he is a hustler after "the buck," does not care about the children, that he is an adulterer or sinner, that his wife is immoral and a killer of her former husband.

The trial court further found the following acts by the mother to be inappropriate: ordering school teachers not to divulge information to the father; alleging that the father was capable of kidnapping the children; asserting that the father abandoned the mother and the children; accusing the father of being a dangerous person; and intercepting school papers which were meant for the father while he had custody. The trial court then concluded:

> All of this appears to be intended to prevent the father from having a close parent/child relationship; something to which he is entitled and which he has a right to expect the Court to protect if possible. And, most important, the undermining of and interference with the relationship is contrary to the children's long-term interests. Central to this decision is the conclusion that this interference is so extreme and chronic, beginning right after the divorce and continuing even with the petition to modify pending, that it outweighs the factor of the father's new home

situation as it relates to the children's preference.

In *Ready,* we said that denying the children the experience of associating with their father can be "'sufficient for the court to interpose its authority and, by modification of the original decree, prescribe what must be done to preserve the child's right.'" 906 P.2d at 385 (quoting *Henson,* 384 P.2d at 723). The evidence in this case indicated that the mother had substantially and repeatedly interfered with the father's rights to visit with the children and had undermined his relationship with them by repeatedly maligning him.

■ The mother asserts that the trial court ignored the children's preference to live with her and that no evidence was presented which showed that a change of custody would be in their best interest. "A child's unequivocal preference to live with a particular parent is a factor to be considered, but the expression of a preference is not conclusive." *Mulkey-Yelverton v. Blevins,* 884 P.2d 41, 44 (Wyo.1994). The trial court did consider the children's preference, but it did not feel that their wishes rose "to the level of importance of the life time needs on their part for a good relationship with *both* parents." With regard to the mother's argument that it had not been shown that the visitation problems harmed the children, we note that the very act of preventing the children from being with their father is not in the children's best interest.

■ The mother further contends that the trial court should not have changed custody until after it determined whether finding her in contempt of court would be effective. The mother cites numerous cases from other jurisdictions in support of her proposition. Those decisions, however, are not binding on this Court, and we decline to follow suit. Instead, we hold that, in extreme cases where the custodial parent intentionally takes action to interfere with or eliminate the visitation rights of the noncustodial parent, a change of custody is an appropriate remedy. *See Lopez v. Lopez,* 97 N.M. 332, 639 P.2d 1186, 1188 (1981). In fact, in *Henson* we said the following with regard to one parent's

interference with the other parent's visitation rights:

> Courts, though they be possessed of the reputed wisdom of Solomon, are conscious of their human fallibility, and the law recognizes that man is without that fore-vision which ensures that his judgment of today will, in light of unforeseen new conditions, prove to be adequate or even proper tomorrow. So, ... the unfortunate disagreements and quarrels of the parties arising from the father's efforts to exercise the rights of visitation ... not only prevented the father from enjoying his child, but, more importantly, the child herself was thereby denied the experience of a favorable association with her own father. If that which was intended to be accorded the child is being denied her, that circumstance of itself was sufficient for the court to interpose its authority and, by modification of the original decree, prescribe what must be done to preserve the child's right.

384 P.2d at 723.

The father's current domestic situation in this case did cause the trial court to be concerned:

> [The father] is now married to [the step-mother], whose former husband met a tragic and untimely death while helping conduct an outdoor scouting venture. She has four children. The [stepmother's] and [the father's] children together make six; a full house, a relatively crowded household and a "handful" for the parents. This means less space, literally and metaphorically for the [father's] children than they enjoyed in their mother's home and which they miss. They have less privacy, more competition for parental attention, fewer opportunities for trips and favored recreational activities, are farther from school and feel more removed from friends than when they are with their mother. [The daughter] is understandably displeased about missing personal property. The [stepmother's] children have had some behavioral problems—not unusual for their age, but not pleasant for the [father's] children. Because of these factors, they would rather live with their mother and visit their father. (By stipulation the Court interviewed the children off the record in the presence of counsel only.) In

more normal circumstances this might compel a conclusion that changing custody to the father would not be in their best interests. But these are extraordinary and extreme circumstances, which returns one to the materiality, referred to above, of some of the mother's statements. They are part of a pattern of conduct.

The trial court thoughtfully considered the relevant factors before finally determining that it should change the custody. The trial court was concerned about the mother's pattern of conduct in interfering with and denying the father his visitation rights and her habit of undermining his relationship with the children. The trial court found that those actions were not in the children's best interest. The father, conversely, demonstrated his ability to provide a stable home environment for the children. He also displayed a willingness to foster and encourage the children in their relationship with the mother. Indeed, the trial court appreciated the father's ability to set aside any bitterness he had toward the mother in order to promote a healthy relationship between the children and their mother. Unfortunately, the mother's hostility prevented her from being able to do the same. We hold that the trial court considered the children's best interest when it awarded custody to the father and that the trial court appropriately exercised its discretion when it decided that a material change of circumstances had occurred.

### B. Attorney and Guardian *Ad Litem* Fees

 The mother asserts that the trial court abused its discretion by ordering her to pay one-half of the father's legal fees and one-half of the guardian *ad litem's* fees because the father did not offer evidence regarding the reasonableness of the fees.

 The trial court may order either party in a divorce case to pay any amount that is necessary to permit the other party to carry on or defend the action. *Rocha v. Rocha,* 925 P.2d 231, 234 (Wyo.1996); Wyo. Stat. § 20–2–111 (1997). "The decision to award attorney's fees rests within the sound discretion of the district court when such fees are authorized by statute." 925 P.2d at 234. "Of course, the party seeking to recover at-

torney's fees bears the burden of demonstrating the reasonableness of the fees and must also submit an itemized billing reflecting the time and rate charged." *Id.*

The mother did not object when the guardian *ad litem's* bill was entered as an exhibit at the trial. A list of the father's legal fees was also admitted without an objection being made by the mother. Both of these exhibits itemized the respective fees.

In *Rocha,* the appellant argued that the district court should not have awarded attorney's fees because the appellee did not present evidence to show that the fees were necessary and the statute required proof of necessity. *Id.* This Court disagreed:

> An itemized list of [the appellee's] attorney's fees was introduced at the hearing and [the appellant] did not object to its introduction. Reasonableness is, of course, a component of the test articulated in *Pekas* [*v. Thompson,* 903 P.2d 532, 536 (Wyo.1995)]. Here, the only evidence of reasonableness was the itemized list which was introduced with no objection from [the appellant]. In the absence of an objection, the reasonableness of the attorney's fees will be determined by the district court through the exercise of its sound discretion. In making that decision, the district court can rely on the itemized list and the directions provided by Wyo. Stat. § 1–14–126(b) (Cum.Supp.1996). The district court did not abuse its discretion when it awarded attorney's fees in this matter.

*Id.* The relevant facts in the case at bar mirror the facts in *Rocha.* Since the mother did not object to either itemization, it was within the trial court's sound discretion to determine the reasonableness of the fees. The trial court did not abuse its discretion when it required the mother to pay one-half of the fees.

### C. Reasonable Cause for Appeal

 The father claims that the mother did not have a reasonable cause for bringing this appeal and asks us to award him fees and costs pursuant to W.R.A.P. 10.05. Sanctions under this rule are not available when the appeal challenges a trial court's discretionary ruling. *Hedrick v. Hedrick,* 902 P.2d 723, 724 (Wyo.1995). Because the issues in this case questioned the trial court's discre-

tionary rulings, we deny the husband's request.

### CONCLUSION

The trial court considered the children's best interest and did not abuse its discretion when it changed the children's primary custody to the father. The trial court also properly awarded guardian *ad litem* and legal fees.

Affirmed.