2017 WY 130

**Willard Donald BISHOP,
Appellant (Plaintiff),**

v.

**Jorja Anna BISHOP, n/k/a Jorja Anna
Manolis, Appellee (Defendant).**

**S-17-0081**

Supreme Court of Wyoming.

November 6, 2017

Representing Appellant: Seth Shumaker, Sheridan, Wyoming.

Representing Appellee: Jason Edward Ochs, Casper, Wyoming.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

KAUTZ, Justice.

[¶1] Willard Donald Bishop (Father) appeals from the district court's order modifying the divorce decree by transferring primary physical custody of the parties' son (the Child) to Jorja Anna Bishop, n/k/a Jorja Anna Manolis (Mother). Father claims the district court abused its discretion when it concluded (a) that Mother had proven a material change in circumstances affecting the Child had occurred since entry of the divorce decree, and (b) that it was in the Child's best

interests to modify the custody provision of the decree.

[¶2] We affirm.

## ISSUES

[¶3] Father presents three issues on appeal that we rephrase and consolidate into two:

1. Whether the district court abused its discretion by finding that there had been a material change in circumstances affecting the welfare of the Child since entry of the decree.

2. Whether the district court abused its discretion by concluding that it was in the Child's best interests to modify custody.

Mother presents similar issues for our review.

## FACTS

[¶4] Mother and Father divorced in Gillette, Wyoming, in August 2014. The district court awarded primary custody of the Child, who was born in 2011, to Father, subject to Mother's reasonable and liberal visitation rights. Beginning in April 2015, the parties filed various motions for orders to show cause alleging the other had violated the terms of the divorce decree. The district court held a hearing on the contempt motions on July 1, 2015. It found Mother in contempt of court for denying Father his right to have the Child on Father's Day weekend and Father in contempt of court for: 1) refusing to allow Mother to begin her weekend visitation with the Child on Thursday nights as required by the decree; 2) denying Mother visitation on Easter weekend and Mother's Day weekend; 3) failing to have the Child developmentally screened; 4) failing to notify the court and Mother of changes in his employment and medical insurance; and 5) failing to transfer money to Mother from his retirement account as required by the property division provision in the decree. The district court entered judgment against Father for the amount due on the retirement funds plus interest and ordered him to pay Mother's attorney fees.

[¶5] Soon thereafter, Mother filed a petition to modify custody, visitation and child support. She also filed several more motions for orders to show cause claiming Father was in violation of the visitation and "obligation to cooperate" provisions of the decree.

[¶6] The district court held a hearing on the contempt motions on May 10, 2016. By that time, Father had refused Mother visitation with the Child for approximately seven months. Father apparently defended his actions by asserting the Child was not safe while visiting Mother because she was living with her boyfriend who was a sex offender. Mother stated that she lived alone and would not place the Child in harm's way. The district court heard testimony from Mother's boyfriend and concluded the Child was not in danger because there was no unsupervised contact between the two and "there is no evidence that [the boyfriend] ha[d] ever engaged in any inappropriate conduct with prepubescent children." The court further found that if Father feared for the Child's safety "the proper procedure was to petition the Court, not to deny visitation unilaterally." The district court again ordered Father to pay Mother's attorney fees.

[¶7] After the hearing, the disputes between the parties continued. Father claimed that Mother had violated the divorce decree by failing to notify him when she sought medical treatment for the child and of her changes in employment and address, cooperate with him about visitation schedules, and pay her share of the Child's medical bills. Mother claimed that Father violated the decree by denying her visitation and access to the Child on his birthday. The district court heard the contempt motions on November 29, 2016, right before the hearing on Mother's petition to modify custody. It concluded Mother was in contempt of court for failing to pay her share of certain medical bills.

[¶8] The district court granted Mother's petition to modify custody, visitation and support. It concluded Mother had demonstrated that a material change in circumstances had occurred since entry of the decree and it was in the Child's best interests to modify the decree and award custody to her. Father

filed a timely notice of appeal from the modification order.[1]

## STANDARD OF REVIEW

[¶9] We review a district court's order on a petition to modify child custody for an abuse of discretion.

"We will not interfere with the district court's decision regarding modification of custody absent a procedural error or a clear abuse of discretion. In determining whether the district court has abused its discretion, we must decide whether it could reasonably conclude as it did. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously."

*Gjertsen v. Haar*, 2015 WY 56, ¶ 11, 347 P.3d 1117, 1122 (Wyo. 2015), quoting *Gray v. Pavey*, 2007 WY 84, ¶ 8, 158 P.3d 667, 668 (Wyo. 2007). We consider the evidence in the light most favorable to the district court's decision, "affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence." *Durfee v. Durfee*, 2009 WY 7, ¶ 6, 199 P.3d 1087, 1089 (Wyo. 2009). *See also Walker v. Walker*, 2013 WY 132, ¶ 22, 311 P.3d 170, 176 (Wyo. 2013).

## DISCUSSION

Wyo. Stat. Ann. § 20-2-204 (Lexis-Nexis 2017) sets out the statutory requirements for modification of custody and visitation orders:

(a) Either parent may petition to enforce or modify any court order regarding custody and visitation.

. . . .

(c) A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20-2-201(a). In any proceeding in which a parent seeks to modify an order concerning child custody or visitation, proof of repeated, unreasonable failure by the custodial parent to allow visitation to the other parent in violation of an order may be considered as evidence of a material change of circumstances. ...

[¶11] Under § 20-2-204(c), the district court conducts a two-step inquiry to determine whether modification of a custody and visitation order is appropriate.

The first step requires a showing that there has been "a material change in circumstances since the entry of the order in question." § 20-2-204(c). Because of the res judicata effect afforded custody orders, such a finding is a threshold requirement. *Hertzler v. Hertzler*, 908 P.2d 946, 949-50 (Wyo. 1995). The district court does not properly acquire jurisdiction to reopen an existing custody order until there has been a showing of "a substantial or material change of circumstances which outweigh society's interest in applying the doctrine of res judicata" to a custody order. *Kreuter v. Kreuter*, 728 P.2d 1129, 1130 (Wyo. 1986). In short, unless the district court finds a material change in circumstances, it cannot proceed to the second step—determining whether a modification would be in the best interests of the child.

*Hanson v. Belveal*, 2012 WY 98, ¶ 18, 280 P.3d 1186, 1193 (Wyo. 2012), quoting *In re TLJ*, 2006 WY 28, ¶ 8, 129 P.3d 874, 876 (Wyo. 2006) (some citations omitted).

### 1. Material Change of Circumstances

[¶12] The party seeking a change of custody has the burden of proving a material change of circumstances has occurred since entry of the governing custody order. *In re TLJ*, ¶ 11, 129 P.3d at 877. The district court evaluates "the current circumstances of the parties in relation to their circumstances at the time the prior custody order was entered." *Id.*, ¶ 10, 129 P.3d at 877, citing *Jackson v. Jackson*, 2004 WY 99, ¶¶ 8-12, 96 P.3d 21, 24-26 (Wyo. 2004). In order to be considered material and justify reopening the decree, the change in circumstances must

---

1. The order also modified visitation and child support in light of the change in custody. Father does not present any specific challenges to those aspects of the order.

affect the welfare of the child. *Hanson*, ¶ 34, 280 P.3d at 1197. *See also, Morris v. Morris*, 2007 WY 174, ¶ 6, 170 P.3d 86, 89 (Wyo. 2007).

[¶13] The district court concluded that Mother had shown "a substantial and material change in circumstances" since entry of the decree in August 2014:

[T]he substantial and material change includes:

a. The court has heard eleven (11) different motions for orders to show cause in the three (3) years [sic] since the *Decree* was entered.

b. Father has consistently and unilaterally denied Mother the visitation to which she is entitled under the *Decree*. He displays controlling behaviors and seems to disregard orders of the court or interpret them in a manner that permits him to keep the minor child away from Mother.

c. The minor child has been enrolled in counseling to deal with the trouble he is having transitioning between households and dealing with the acrimonious relationship between his parents. The parent[s'] relationship has not improved, even with court-ordered parenting classes.

d. Since entry of the *Decree*, Mother's life has stabilized. She has a wonderful supportive family, a good job, a safe home, and is advancing her education. Although her significant other has a criminal record, the court heard testimony from him in May 2016 and determined he poses no risk to the minor child.

e. Both Mother and Father have new infants at home. Father's child was born prematurely and although Father denies the child has any health problems, he admits the child's premature birth has resulted in the child needing extra care. Therefore, the [Child] now has two (2) half-siblings in Mother's home and one (1) half-sibling in Father's home.

f. The *Decree* does not sufficiently address how the parties are to transition between summer visitation and monthly visitation. Given the inability of the parties to communicate effectively with one another, this lack of guidance results in arguments and requests for court intervention in the form of orders to show cause.

g. Now that the minor child is school-aged, Father tries to subvert Mother's participation in the minor child's schooling by routinely "intercepting" the Friday school folder and keeping it at his home so Mother cannot see what the child is doing in school.

[¶14] Under § 20-2-204(c), "proof of repeated, unreasonable failure by the custodial parent to allow visitation to the other parent in violation of an order may be considered as evidence of a material change of circumstances." *See also*, 170 P.3d at 90-91. Here, the district court found Father in contempt of court several times for denying Mother visitation. Father claims he was justified in denying visitation because Mother's boyfriend was a sex offender and he feared for the Child's safety. He cites *TLJ*, ¶ 13, 129 P.3d at 877, as suggesting a custodial parent may refuse visitation to the other parent if "motivated by concerns for the safety and well-being" of the child. We made that remark in *TLJ* within the larger context of noting that the mother had allowed the father regular visitation as contemplated by the custody order, with a few isolated exceptions based upon the safety and wellbeing of the child. *Id.* We did not elaborate on the circumstances surrounding the denial of visitation and certainly did not suggest that a parent has the absolute right to withhold visitation based upon his or her personal concerns about the child's safety and well-being. Instead, our point was that the mother's conduct in withholding visitation on a few isolated occasions did not amount to a material change in circumstances when, in general, the father enjoyed regular visitation with the child.

[¶15] In this case, by contrast, Father withheld visitation without court approval for seven months based upon his own determination that Mother's boyfriend posed a threat to the Child. His violations of the visitation order were neither few nor isolated. In *Shindell v. Shindell*, 2014 WY 51, ¶¶ 13-16, 322 P.3d 1270, 1274-75 (Wyo. 2014), we upheld the district court's determination that the mother was in contempt of court for refusing

to send the parties' two daughters to the father for visitation. She justified her refusal on her fear that the father's pets would trigger one of the daughter's allergies and asthma. This Court criticized the mother's decision to unilaterally ignore the court's visitation order without attempting to have it modified. *Id. See also, Kleinpeter v. Kleinpeter*, 2017 WY 76, ¶¶ 19-20, 397 P.3d 189, 195 (Wyo. 2017) (condemning the mother's action in unilaterally discontinuing the father's visitation with the children). Although the question in *Shindell* was presented in a contempt proceeding rather than a modification proceeding, the same principle holds true here. Father should have sought modification of the visitation order if he feared for the Child's safety while visiting Mother.[2]

[¶16] As the district court pointed out in the order modifying custody, it heard evidence at an earlier contempt hearing regarding Mother's boyfriend and concluded he was not a danger to the Child. *See generally, Hanson*, ¶ 45, 280 P.3d at 1199 (accepting the district court's unchallenged finding that the mother's brother, who was a registered sex offender, was not a threat because he was never left alone with the child). Father did not challenge the district court's contempt decision; therefore, his attempt in the modification action to justify his violations of the visitation order because of his concerns for the Child's safety was neither timely nor appropriate. The district court properly considered Father's repeated and prolonged violations of the visitation provision of the decree in finding a material change of circumstances.

 [¶17] Father also argues that "[a]ggressive or anxious behavior of a child attributed to the custodial parent has not been held by this court to not (sic) constitute a material change in circumstances." The district court referenced the Child's need for

counseling "to deal with the trouble he is having transitioning between households and dealing with the acrimonious relationship between his parents" as one of the bases for finding a material change in circumstances. Father is correct that a child's anxiety or other emotional problems will not **necessarily** establish a material change of circumstances. *See, e.g., Willis v. Davis*, 2013 WY 44, ¶ 12, 299 P.3d 88, 92 (Wyo. 2013); *ELA v. AAB*, 2016 WY 98, ¶ 16, 382 P.3d 45, 49 (Wyo. 2016). However, depending on the situation, a change in the child's emotional state may be an appropriate factor in finding a material change of circumstances. *See, e.g., Harshberger v. Harshberger*, 2005 WY 99, ¶ 13, 117 P.3d 1244, 1251 (Wyo. 2005).

[¶18] Here, the district court found that the child's emotional problems developed after the divorce as a result of his difficulty with transitioning between households and the parents' acrimonious relationship. It is undisputed that the parents had a hostile relationship that led to problems with transferring the child between them, and the counselor indicated that the Child exhibited symptoms of anxiety due to the situation. Father has not demonstrated that the district court abused its discretion by considering the child's emotional state and/or need for counseling in determining whether there had been a material change in circumstances.

 [¶19] Father also argues that the conditions listed by the district court as supporting its finding of a change of circumstances did not materially affect the Child's welfare. As we said earlier, the change in circumstances must materially affect the Child. *See Hanson*, ¶ 34, 280 P.3d at 1197. There is no question that the change in circumstances in this case affected the Child's welfare. Father's refusal to comply with the decree's visitation requirements clearly interfered with the Child's relationship with

---

**2.** Father testified that he contacted CASA (Court Appointed Special Advocates Program) apparently seeking assistance in monitoring visitation, but he did not know whether Mother signed up for those services. The CASA program "sometimes offer services [such] as a neutral forum or intermediary to facilitate child visitation and communication between parties to a custody order." *JLK v. MAB*, 2016 WY 73, ¶ 8 n.1, 375 P.3d 1108,

1111 n.1 (Wyo. 2016); citing *Gjertsen*, ¶¶ 6-7, 347 P.3d at 1121. *See also*, Wyoming Rules of Procedure for Juvenile Courts, Rule 8. However, the visitation order did not require CASA supervision. Mother was entitled to unsupervised visitation with the Child, and Father did not have the right to unilaterally impose additional requirements for her to exercise her visitation rights.

Mother. A child has a right to have a relationship with both of his parents, and when one parent undermines the other parent's relationship with the child, it is contrary to the child's welfare. *See Russell v. Russell,* 948 P.2d 1351, 1354 (Wyo. 1997), citing *Ready v. Ready,* 906 P.2d 382, 385 (Wyo. 1995). Furthermore, the on-going hostilities between the parents compromised the Child's stability, which is demonstrated by his need for counseling. Stability in the child's life is of utmost importance in determining custody matters. *See generally, Zupan v. Zupan,* 2010 WY 59, ¶ 27, 230 P.3d 329, 337 (Wyo. 2010). The district court did not abuse its discretion by concluding there had been a material change in circumstances that affected the Child since entry of the decree.

### 2. Best Interests of the Child

 · [¶20] After deciding that there has been a material change in circumstances, the court determines whether modification of the custody order will be in the best interests of the child. *Hayzlett v. Hayzlett,* 2007 WY 147, ¶ 9, 167 P.3d 639, 642 (Wyo. 2007); Section 20-2-204(c). Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2017) states in relevant part:

> In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:
>
> (i) The quality of the relationship each child has with each parent;
>
> (ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
>
> (iii) The relative competency and fitness of each parent;
>
> (iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
>
> (v) How the parents and each child can best maintain and strengthen a relationship with each other;
>
> (vi) How the parents and each child interact and communicate with each other

and how such interaction and communication may be improved;

> (vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;
>
> (viii) Geographic distance between the parents' residences;
>
> (ix) The current physical and mental ability of each parent to care for each child;
>
> (x) Any other factors the court deems necessary and relevant.

 [¶21] In this case, the district court modified the decree and awarded primary custody to Mother, reasoning:

13. The court finds the best interests of the [Child] are served by modifying custody, visitation and support:

a. It is clear that the current custody arrangement is not working.

b. The [Child] suffers from anxiety—apparently largely due to the acrimonious relationship between his parents.

c. Father's controlling behaviors and refusal to obey orders of the court are damaging the [C]hild's relationship with Mother and her relationship with him.

d. Mother has a stable home and wonderful family support in Sheridan.

e. In Sheridan, the [Child] will be able to attend the same school as his half-sibling, fostering and strengthen[ing] their loving bond.

f. Mother seems more willing and capable of fostering the relationship between Father and son than Father is of fostering the relationship between Mother and son.

14. The court finds the parties shall continue to share legal custody of the [Child]. However, physical custody shall be vested in Mother, with reasonable and liberal visitation to Father.

15. Although neither party has asked the court to make specific findings of fact or conclusions of law, the court has taken into account the factors enumerated in Wyo.

Stat. Ann. § 2-2-201 in making its custody and visitation determinations.

16. The court has also taken into consideration the Wyoming Supreme Court's holding in the case of *Aragon v. Aragon*, 2005 WY 5 [104 P.3d 756], and the importance of keeping siblings, including half-siblings, together. Mother has one (1) child who is slightly older than [the Child] and a new infant in her home. Father has a new infant in his home. Therefore, [the Child] now has half-siblings in both homes. However, based on testimony adduced at the hearing, the court finds most credible the testimony of Mother that [the Child] has the strongest bond with his elder half-brother. Although the court hopes to see [the Child] develop and strengthen his bonds with his two younger half-siblings, the court finds *Aragon* weighs slightly more in favor of placing primary custody in Mother at this time.

[¶22] Father claims that the district court abused its discretion by deciding it was in the Child's best interests to transfer custody to Mother. Addressing the district court's reliance on Father's repeated refusals to allow Mother visitation as a basis for modifying custody, Father makes the following obscure argument:

In its judgment, the trial court relies on its finding that the Father has denied visitation and that the trial court has heard 11 motions for contempt. The only possible interpretation from that assertion by the trial court is the court hearing those motions is due to Father having custody of the child and if it was not for the Father having custody then the parties would not need to file any motion for contempt. Thus, there is little, if anything, from the trial court's order that supports the assumption that a transfer in custody serves [the Child's] best interests. Even a review of the evidence presented at trial does not reveal a scintilla of evidence to support such a belief.

[¶23] It is true that, if Father did not have custody, he generally would not have been in a position to deny Mother visitation and there would have been no need for her to file her contempt motions. However, it does not

follow that transferring custody to Mother in light of Father's contemptuous actions was not in the Child's best interests. Father's argument demonstrates a misunderstanding of the importance of a good relationship with each parent to the Child's wellbeing. The best interests factors in § 20-2-201 focus on the relative abilities of the parents to care for the child and to encourage the child's relationship with the other parent. The custodial parent's repeated violation of the visitation order is not in the best interests of the child. *See Russell,* 948 P.2d at 1354; *Ready,* 906 P.2d at 385.

[¶24] Father also argues that the district court's decision was not in the Child's best interests because the Child's counselor believed a change in custody would adversely affect the Child's cognitive development. The portion of the trial transcript cited by Father for that assertion does not support it. Father's attorney asked the counselor if there was anything in her sessions with the Child indicating that a change in custody would be harmful to him. The counselor testified, "Yes. There was a time when he had shared that he didn't want to go to his mom's. I also would be concerned due to the new baby." The counselor said a five-year-old child would be afraid that the new baby would replace him or that he is not wanted. The questioning continued:

Q. ... [I]n your professional opinion in your practice, is there something about this particular time frame that makes him vulnerable? Or any five-year-old?

A. **Any five-year-old to be honest. And as they're developing their skills to manage and their cognitive development, it can hinder that.**

(emphasis added).

[¶25] The bolded answer is the one Father claims shows that the counselor believed the Child's cognitive development would be adversely affected by a change in custody. We do not read the statement the way Father does. The counselor's statement was general; it pertained to any five-year-old child who has divorced parents and a new sibling. Moreover, it is hard to see how those concerns could weigh in favor of Father. At the time of trial, both parents had infants with

their significant others, so both households would need to address the Child's fears about being replaced by the new babies.

[¶26] Father also lists other facts that he claims weigh against granting custody to Mother—the Child had anxiety from witnessing Mother being arrested; the Child had no meaningful relationship with Mother's other children; the Child told his counselor he slept on the floor while visiting Mother; and the Child does not want to live with Mother because he will have to change schools and discontinue his extracurricular activities. Initially, we note that Father recites the facts from his perspective when our standard of review requires just the opposite. We review the facts in the light most favorable to Mother as the prevailing party, omitting entirely any conflicting evidence. *Walker*, ¶ 22, 311 P.3d at 176, citing *Durfee*, ¶ 6, 199 P.3d at 1089.

[¶27] The record does not support Father's assertion that it was not in the Child's best interests to transfer custody to Mother because the Child's anxiety was caused by witnessing Mother being arrested. Father told the counselor that the Child was anxious and afraid of blue lights because he witnessed Mother's arrest.[3] The counselor, therefore, assigned a "provisional diagnosis" to the Child of Post-Traumatic Stress Disorder (PTSD). She conceded, however, that her information about the arrest came from Father, not the Child. The counselor also stated that it did not appear to be true that the Child was afraid of blue lights, the Child was quite young when the incident happened, and she had not had enough time in therapy with him to confirm the PTSD diagnosis.

[¶28] Father's assertion that the Child had no meaningful relationship with Mother's other children is apparently based upon the counselor's testimony that she did not "note any particular emotional bonding" between the Child and Mother's other children. She formed that opinion after the Child told her that Mother's older child (his older brother) would not play with him and that made him sad and "well, the other one's a girl," refer-

ring to Mother's infant. This testimony was countered by Mother's testimony that her children had a close bond, the Child and her older son enjoyed many activities together, and they would attend the same elementary school if she was awarded custody of the Child. The district court had the duty to weigh the evidence, including any expert testimony, and determine the credibility of the witnesses' statements and opinions. *See Semler v. Semler*, 924 P.2d 422, 423-24 (Wyo. 1996) (upholding the district court's custody decision rejecting expert opinion that the children had been sexually abused). It concluded that Mother's testimony about the relationship between the Child and his siblings was "most credible."

[¶29] The district court also specifically referred to the principles set forth in this Court's decision in *Aragon v. Aragon*, 2005 WY 5, ¶¶ 24-26, 104 P.3d 756, 763-64 (Wyo. 2005) in its custody determination. In that case, we stated separating siblings, whether full, half or step siblings, generally is not preferred, although it is just one of several factors considered in determining the best interests of the child. *Id.* Here, any custody order would result in the Child being separated from the half sibling(s) in the other household. By granting Mother custody, the district court allowed the Child to spend more time with his elder half-brother, with whom he understandably had a stronger bond given the other children were still very young.

[¶30] With regard to the assertions that the Child did not have a bed at Mother's home and did not want to live with Mother, the district court again had to weigh the evidence and make credibility determinations. The counselor testified that the Child told her about having to sleep on the floor in the baby's room or the couch while at Mother's home and that "there was a time when he had shared that he didn't want to go to his mom's." However, Mother testified the Child had his own room at her house, it was decorated the way the Child wanted, and the Child did well at her home. The district court

---

**3.** Mother admitted she had been arrested prior to the divorce for possession of a controlled sub- stance.

obviously gave greater weight to Mother's testimony, and our standard of review requires us to accept the evidence most favorable to its decision and view it in the light most favorable to Mother. We, therefore, reject Father's contrary assertions about the evidence.

[¶31] The district court's order includes a detailed analysis of the evidence presented at the hearing. The court referenced the factors in § 20-2-201 and determined it was in the Child's best interests for Mother to have primary custody. The record supports the district court's determination that Father's continuous interference with Mother's relationship with the Child and his refusal to follow the court's orders despite being held in contempt of court weighed against the Father retaining custody. The court also noted that Mother's life had stabilized since entry of the decree, and the record supports that. The district court had earlier resolved any concerns about Mother's boyfriend. At the time of the hearing, Mother had held the same job for some time, was enrolled in college working toward her nursing degree, and had the support of her extended family.

[¶32] Finally, the district court concluded that Mother seemed more willing and capable of fostering a relationship between the Child and Father than Father was of fostering the relationship between Mother and the Child. *See* § 20-2-201(a)(iv) and (vii); *Russell*, 948 P.2d at 1355 (discussing parent's willingness to encourage relationship between other parent and child in reviewing the district court's custody decision). This, too, is borne out in the record. As we said above, Father's actions unquestionably harmed the relationship between Mother and the Child. On the other hand, Mother's testimony indicated that she would follow the court's orders, realized the importance of the relationship between Father and the Child, and would not interfere with Father's interactions with the Child.

[¶33] The record supports the district court's determination that it was in the Child's best interests to award primary custody to Mother. The district court did not abuse its discretion by modifying the decree and placing the Child in Mother's custody.

[¶34] Affirmed.