# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 128

OCTOBER TERM, A.D. 2025

December 3, 2025

PETER AUGUSTUS SMITH,

Appellant
(Defendant),

v.

S-25-0162

JUSTINE DELORES SMITH,

Appellee
(Plaintiff).

*Appeal from the District Court of Washakie County*
*The Honorable Bobbi Dean Overfield, Judge*

*Representing Appellant:*
Christopher J. King, APEX Legal, P.C., Worland, Wyoming.

*Representing Appellee:*
Alex H. Sitz III, Meinecke & Sitz, LLC, Cody, Wyoming; Anna Reeves Olson, Long Reimer Winegar LLP, Casper, Wyoming.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**GRAY, Justice.**

[¶1]    Justine Delores Smith (Mother) filed for divorce from Peter Augustus Smith (Father).  After a bench trial, the district court awarded the parties joint legal custody of their two children and designated Mother as the primary residential caregiver and the final decision maker in all matters involving the children.  The district court awarded Father parenting time every first, third, and fifth weekend of the month; Tuesday and Thursday evenings; and time during holidays and over the summer.  Father appeals, arguing the district court violated his fundamental constitutional right to associate with his children and abused its discretion when it did not order equal parenting time.  We affirm.

## ISSUES

[¶2]    Father raises two issues, which we rephrase:

1. Did the district court violate Father's fundamental constitutional right to associate with his children when it did not order equal parenting time?

2. Did the district court abuse its discretion when it limited Father's time with his children?

## FACTS

[¶3]    Mother and Father married in 2020 and have two children, CJS, born in 2022, and NAS, born in 2023.  In 2024, Mother filed a Complaint for Divorce, after which the district court held a two-day bench trial.  At trial, the district court heard the following testimony.

[¶4]    After the parties were married and had children, Mother sold her hair salon and stayed home with the children.  Mother characterized her relationship with Father as "toxic . . . and emotionally abusive."  Mother moved out of the marital home in August 2023, and since then she has resided in a rental house in Worland.  She plans to work on her family's farm, which will allow her to have the children with her when she is working.  Mother currently receives financial assistance from her family.

[¶5]    Father is a mechanic and owns his own business.  During the marriage, he typically worked long hours, often working evenings and weekends.  Mother testified that due to his busy schedule, he was not a present father and would often only see the children for 30 minutes to an hour before the children's bedtime.  Father testified that he could reduce his workload to spend more time with the children and that he has done this consistently since the separation.  Father also has a sister who lives nearby and who can assist with childcare as needed.  Father continues to live in the marital home.

1

[¶6]   Numerous witnesses testified Mother, who has been the primary caregiver since birth, is loving, attentive, and has a good relationship with the children.  Father testified that the children "seem to" have a good relationship with Mother.  Father's sister testified that Mother and Father have healthy relationships with the children.

[¶7]   Mother and Father have very different approaches to parenting.  Mother described Father's disciplinary style, which includes spanking and isolating the children for punishment, as "very harsh . . . [b]orderline abusive."  When asked if he thought it was effective to spank a two-year-old, Father responded, "[f]or the most part, no."  Mother believes that some medical care and vaccinations may be appropriate for the children.  Father distrusts modern medicine and testified that while he is not opposed to vaccines, he wants more information before agreeing to having them administered to the children.  Mother considers public school a viable option.  Father strongly believes homeschooling would be best.

[¶8]   Mother testified that CJS gets distressed before visits with Father.  Mother also testified that Father is uncooperative when she attempts to FaceTime with the children when they are in Father's care.  Father admitted that he did not facilitate many phone calls or FaceTimes between Mother and the children while the children were in his care.  He explained that he thinks they are too young to interact via video chat.  Mother and the children's maternal grandmother testified about an incident where Father dropped off the children with soiled diapers and severe diaper rash that required medical attention.

[¶9]   Father testified that after they separated, Mother called DFS and law enforcement with various unsubstantiated complaints.  Father also testified Mother and her family would frequently follow him when he had the children.  For example, on one occasion, Father and the children were visiting his sister, and Mother parked down the road "pretty much the entire time" they were there.

[¶10]  There was testimony indicating that both parents had episodes of heavy drinking.  One of Father's friends testified that Father drank too much on a recent snowmobiling trip with his friends.  Father testified that prior to having children, Mother drank to excess on several occasions.

[¶11]  Both Father's sister and Mother testified that Father controlled the parties' finances, controlled the family's diet, made derogatory comments about Mother's intelligence, and isolated Mother from her family.  The district court heard other testimony related to property and finances that are not at issue on appeal and are not addressed in this opinion.

[¶12]  To determine custody of the children, the district court analyzed the best interest factors outlined in Wyo. Stat. Ann. § 20-2-201(a) and found that due to the parties' different viewpoints on the children's health, education, and discipline, a shared custody schedule was not workable.  The district court awarded Mother and Father joint legal custody and

2

designated Mother as the primary residential caregiver and final decisionmaker. It awarded Father parenting time on Tuesday and Thursday evenings; every first, third, and any fifth weekend of each month; holiday time; and additional summer visitation. The court also ordered Father to pay child support, divided the marital property, and granted the divorce. Father appeals only the custody portion of the order.

## STANDARD OF REVIEW

[¶13] "[W]hether a district court's custody order violates constitutional rights is a question of law that we review de novo." *Burbridge v. Dalin*, 2024 WY 119, ¶ 10, 558 P.3d 954, 957 (Wyo. 2024) (citing *Taulo-Millar v. Hognason*, 2022 WY 8, ¶ 16, 501 P.3d 1274, 1280 (Wyo. 2022)). When the issue raised is not a constitutional one, our review of the district court's custody decision is for an abuse of discretion. *Bailey v. Bailey*, 2024 WY 65, ¶ 6, 550 P.3d 537, 542 (Wyo. 2024) (citations omitted).

> "A court abuses its discretion if it acts in a manner that exceeds the bounds of reason under the circumstances, violates some legal principle, or ignores a material factor deserving significant weight." [*Bailey*, ¶ 6, 550 P.3d at 542] (citing *Hyatt v. Hyatt*, 2023 WY 129, ¶ 48, 540 P.3d 873, 888 (Wyo. 2023)). We consider the evidence presented "in the light most favorable to the district court's decision, 'affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.'" *Ianelli v. Camino*, 2019 WY 67, ¶ 20, 444 P.3d 61, 66 (Wyo. 2019) (quoting *Bishop v. Bishop*, 2017 WY 130, ¶ 9, 404 P.3d 1170, 1173 (Wyo. 2017)). We do not reweigh the evidence. *Id.* (citation omitted).

*Amadio v. Amadio*, 2025 WY 21, ¶ 12, 564 P.3d 259, 264 (Wyo. 2025) (quoting *Vassilopoulos v. Vassilopoulos*, 2024 WY 87, ¶ 7, 557 P.3d 725, 728–29 (Wyo. 2024)). "Judicial discretion is not absolute[.] 'Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.'" *Domenico v. Daniel*, 2024 WY 2, ¶ 29, 541 P.3d 420, 429–30 (Wyo. 2024) (quoting *Ianelli v. Camino*, 2019 WY 67, ¶ 21, 444 P.3d 61, 66 (Wyo. 2019)).

## DISCUSSION

I. *Did the district court violate Father's fundamental constitutional right to associate with his children when it did not order equal parenting time?*

[¶14] Father argues the divorce decree is unenforceable because it violated his fundamental right to associate with his minor children. He contends that when both parents are found to be fit parents, and no best interest factors prevent them from exercising split or half-time custody with their children, a district court cannot constitutionally restrict one parent's time to less than half time.[1]

[¶15] Father relies on *Troxel v. Granville* and its progeny. In *Troxel*, the United States Supreme Court struck down Washington state's grandparent visitation statute, holding that it violated parents' rights to due process of law. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000) (plurality opinion). In doing so, the *Troxel* Court "made several key points. First, 'the interests of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized' under the due process clause of the United States Constitution." *Ailport v. Ailport*, 2022 WY 43, ¶ 12, 507 P.3d 427, 434 (Wyo. 2022) (quoting *Troxel*, 530 U.S. at 65, 120 S.Ct. at 2060). Second, "a simple weighing of the best interests of the children to establish grandparent visitation is insufficient to protect parents' liberty interest in rearing their children." *Id.* ¶ 13, 507 P.3d at 434 (quoting *Troxel*, 530 U.S. at 67, 120 S.Ct. at 2061). And third, "fit parents are presumed to act in their children's best interests and their decisions regarding visitation with grandparents are entitled to 'special weight' or deference." *Id.* ¶ 14, 507 P.3d at 434 (quoting *Troxel*, 530 U.S. at 68–69, 120 S.Ct. at 2061–62).

[¶16] Father contends that these principles apply in custody cases where two fit parents vie for custody of their children. He argues that *Troxel* "unequivocally affirmed the fundamental right of parents to direct the care, custody and control of their children," and, as a result, the district court's application of the "best interests analysis" set forth in Wyo. Stat. Ann. § 20-2-201(a) and its conclusion that he was entitled to less than half time with his children violated his fundamental rights. Father's reliance on *Troxel* is misplaced.[2]

[¶17] In the context of grandparent visitation, a parent's decision is entitled to "special weight" and is presumed valid absent a showing of parental unfitness or harm to the child. *Galvan v. Malone*, 2025 WY 65, ¶¶ 12–13, 569 P.3d 1131, 1135 (Wyo. 2025); *Ward v. Belden*, 2023 WY 111, ¶ 15, 538 P.3d 980, 986 (Wyo. 2023); *Burbridge*, ¶ 12, 558 P.3d at 957. Only after a showing of parental unfitness or harm to the child may courts consider

---

[1] W.R.A.P. 7.07 requires service of briefs on the Wyoming Attorney General when a party alleges a statute is unconstitutional. Father did not serve a copy of his brief upon the attorney general. To the extent Father argues Wyo. Stat. Ann. § 20-2-201(a), which sets out statutory best interest factors, is unconstitutional, we do not consider his argument. *See Conrad v. Uinta Cnty. Republican Party*, 2023 WY 46, ¶ 30, 529 P.3d 482, 494 (Wyo. 2023).

[2] Father also cites to secondary sources, Janet Weinstein, *And Never the Twain Shall Meet: The Best Interests of Children and the Adversary System*, 52 U. Miami L. Rev. 79, 108 (1997), and Eugene Volokh, *Parent-Child Speech and Child Custody Speech Restrictions*, 81 N.Y.U. L. Rev. 631 (2006), in support of his argument. We find the rationale in these articles unavailing.

4

whether grandparent visitation serves the children's best interests. *Galvan*, ¶ 13, 569 P.3d at 1135.

[¶18] This Court has already addressed the limits of *Troxel* and Wyoming cases addressing grandparent rights as they apply to custody disputes between parents, *supra* ¶¶ 15, 17, and has held that those cases do not apply to disputes between two fit parents. "The analysis is different when the dispute is between two fit parents." *Burbridge*, ¶ 13, 558 P.3d at 957. "When two fit parents disagree, the court must provide a resolution of the dispute." *Domenico*, ¶ 60, 541 P.3d at 436. Indeed, "[c]ourts deciding parental rights matters are regularly called upon to resolve disputes when dedicated, loving, and fit parents are unable to reach agreement." *Id.* ¶ 66, 541 P.3d at 438. "Court resolution [of the] dispute[] . . . involve[s] no state intrusion on the parties' right to parent." *Id.* (citation omitted). We reaffirm these holdings.

[¶19] Where circumstances involve two fit parents and "one parent's fundamental right [is] pitted against the other parent's fundamental right," the "best interests" test in Wyo. Stat. Ann. § 20-2-201(a) applies. *See Padula-Wilson v. Wilson*, No. 1203-14-2, 2015 WL 1640934, at *9 (Va. Ct. App. Apr. 14, 2015); *see also Roberts v. Roberts*, 586 S.E.2d 290, 295 (Va. Ct. App. 2003) ("[I]n any child custody decision [involving conflicting parental interests], the lodestar for the court is the best interest of the child, and the rights of the parents must be tempered by this guiding principle." (citations and quotation marks omitted)); *Banning v. Newdow*, 14 Cal. Rptr. 3d 447, 456 (Ct. App. 2004) (the child's best interests is a compelling state interest).

[¶20] Wyo. Stat. Ann. § 20-2-201(d) provides:

> The court shall order custody in well defined terms to promote understanding and compliance by the parties. In determining custody a court shall not favor or disfavor any form of custody. **Custody shall be crafted to promote the best interests of the children, and may include any combination of joint, shared or sole custody.**

Wyo. Stat. Ann. § 20-2-201(d) (LexisNexis 2025) (emphasis added). Wyo. Stat. Ann. § 20-2-201(a) sets forth a nonexclusive list of factors courts should evaluate when determining best interests. *See infra* ¶ 23.

[¶21] Here, there is nothing in the record to suggest that either parent is unfit—the dispute is between two fit parents. Father requested shared 50/50 custody. Mother requested primary custody with some parenting time for Father. The district court considered the factors set forth in Wyo. Stat. Ann. § 20-2-201(a) to determine a custody arrangement that would serve the best interests of the children. After weighing the best interest factors, it ordered joint legal custody and designated Mother as the primary residential caregiver and

final decisionmaker regarding medical care, religion, and education. The custody arrangement allows Father visitation every first, third, and fifth weekend of each month. The application of the best interest factors and the resulting custody arrangement do not violate Father's fundamental right to parent. *See Padula-Wilson*, 2015 WL 1640934, at \*9 (holding "the circuit court's consideration of the best interests of the children in making its custody and visitation determinations did not violate the mother's constitutional rights"); *Lamb v. Pierce*, No. S-11943, 2006 WL 3114380, at \*4 (Alaska Nov. 1, 2006) ("Accepting for the sake of discussion Lamb's allegations of changed circumstances, we see no sound basis in the law or the record to conclude that the best-interests factors, as applied in light of these changes, would produce an unconstitutional custody ruling."); *Seymour v. Seymour*, 433 A.2d 1005, 1007 (Conn. 1980) ("[A] statute that vests discretion in the trial court to determine the best interests of a child in awarding custody" is not unconstitutional.).

## II. Did the district court abuse its discretion when it limited Father's time with his children?

[¶22] Father also argues the district court abused its discretion when it limited his time with the children to less than half time.

[¶23] In determining its custody arrangement, the district court conducted a detailed analysis of each of the Wyo. Stat. Ann. § 20-2-201(a) best interest factors. It concluded two of these factors favored Father, three favored Mother, and the rest were neutral. We summarize the district court's findings as they relate to the factors:

**(i) The quality of the relationship each child has with each parent. Wyo. Stat. Ann. § 20-2-201(a)(i).** The court noted that the children are very young and have spent most of their time with Mother, as she has been the primary caregiver and a stay-at-home mother while Father has been working long hours building his business. The court recognized Father's testimony that he intends to work less and spend more time with the children. The court pointed to Mother's testimony about Father's harsh disciplinary practices and considered evidence introduced by Mother that CJS said she did not want to visit Father. This factor weighed in favor of Mother.

**(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed. Wyo. Stat. Ann. § 20-2-201(a)(ii).** The court noted that Mother has been the primary caregiver. When Mother worked, CJS stayed with Father's sister, but Mother sold her business and did not work outside the home after NAS was born. The court recognized that Mother had presented evidence showing that after spending time with Father, the children had not had their diapers changed, and NAS had severe diaper rash. The court observed that, according to the testimony, Father was not around much

6

during the marriage but testified that he intends to rearrange his work schedule to spend more time with the children. The court found this factor favored Mother.

**(iii) The relative competency and fitness of each parent. Wyo. Stat. Ann. § 20-2-201(a)(iii).** The court addressed testimony that both parents had past episodes of heavy drinking—Mother, prior to having children, and Father, more recently on a snowmobiling trip—and concluded this factor was neutral.

**(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times. Wyo. Stat. Ann. § 20-2-201(a)(iv).** The court found that Mother had accepted parenting responsibilities since the children were born and recognized that Father appears to be willing to accept responsibilities and had used all visitation granted to him in the district court's temporary order. The court also noted that Mother has been reluctant to relinquish care to Father and had been found in contempt for denying Father parenting time required by the temporary order.[3] The court expounded that since that time Mother has complied with visitation. The court determined this factor favored Father.

**(v) How the parents and each child can best maintain and strengthen a relationship with each other. Wyo. Stat. Ann. § 20-2-201(a)(v).** The court determined the children are young and would benefit from in-person time with each parent. The court recognized that the children may "have a better relationship with their parents if the[] [parents were] not constantly at odds with each other about every decision that needs made[.]" It expressed concern that "[b]ased on the parents['] extremely different perspectives on medical care and schooling[, it] expects the continuation of disagreements . . . on a consistent basis." The court concluded this factor was neutral.

**(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved. Wyo. Stat. Ann. § 20-2-201(a)(vi).** The court said the children are young and there was not much evidence presented about the parents' communication with them. It found, however, there was evidence of "voluminous text messages" from Father to Mother that were "a[t] times, derogatory and threatening." This factor weighed in favor of Mother.[4]

**(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including**

---

[3] The district court entered a temporary custody and visitation order on October 11, 2024. Father filed a motion for order to show cause, alleging, among other things, Mother was in contempt for withholding visitation on two occasions, contrary to the temporary custody order. The district court found Mother in contempt for denying parenting time on one occasion.

[4] The text messages are not part of the record, and there was little testimony about them or their content.

7

**the right to privacy. Wyo. Stat. Ann. § 20-2-201(a)(vii).** The court addressed specific evidence, including Father's refusal to turn on the light when the children were videoconferencing with Mother, Mother's surveilling of Father during his parenting time, and Mother's reluctance to provide Father visitation until ordered by the court. The Court admonished the parents and directed that both parents, going forward, should allow reasonable phone or video visits during their parenting time. The court concluded this factor favored Father.

**(viii) Geographic distance between the parents' residences. Wyo. Stat. Ann. § 20-2-201(a)(viii).** The court found that both parties live in Worland, Wyoming, and this factor was neutral.

**(ix) The current physical and mental ability of each parent to care for each child. Wyo. Stat. Ann. § 20-2-201(a)(ix).** The Court found that both parents are physically and mentally able to care for the children, and this factor was neutral.

**(x) Any other factors the court deems necessary and relevant. Wyo. Stat. Ann. § 20-2-201(a)(xi).** The court discussed the parents' hostilities and recognized that "[i]t will require efforts by both parties to end the hostility." It found this factor was neutral.

After weighing the factors, the district court reasoned:

> [T]hese parents have substantially different parenting styles and expectations as to how the children will be raised. Seemingly minor decisions as to when and if the minor children should drink raw milk is like World War III. This is a minor issue compared to decisions that will have to be made about medical care and education. This Court always considers and generally finds it is in the best [interests] of the children to spend as much time as possible with each of their parents, but after considering the substantial differences between these parents and weighing all the factors listed above it cannot find that an alternating weekly schedule would be in the best interests of these children. The children need some consistency in their life and the Court believes that will only happen in this situation if one parent is the primary caregiver.

[¶24] Father contends the district court improperly based its custody determination on the parents' inability to get along and erroneously weighed the evidence, particularly where the parties presented divergent testimony.[5]

---

[5] For example, he cites Mother's testimony about his absences due to building his business, which he did

8

[¶25]  We decline to reweigh the evidence.  We have explained, "To show an abuse of discretion, it 'is not enough for an appellant to summarize alleged errors and to give [his] views of the import of the evidence.'"  *Bruegman v. Bruegman*, 2018 WY 49, ¶ 57, 417 P.3d 157, 174 (Wyo. 2018) (quoting *Lopez v. Lopez*, 2005 WY 88, ¶ 20, 116 P.3d 1098, 1103 (Wyo. 2005)).  The district court provided a detailed analysis of all the statutory factors.  Its findings and conclusions are supported by the record and did not exceed the bounds of reason.

[¶26]  Father also contends that the district court abused its discretion because it did not "identify a single way how [the custody it ordered] would be in the best interests of the children."  We disagree.  The district court explained that

> after considering the substantial differences between these parents and weighing all the [best interest] factors[, it] cannot find that an alternating weekly schedule would be in the best interests of these children.   The children need some consistency in their life and the Court believes that will only happen in this situation if one parent is the primary caregiver.

This conclusion was a reasonable one, supported by the record.

[¶27]  Father invites this Court to adopt a new rule—absent proof of parental unfitness, two fit parents possess a right to equal parenting time that cannot be overridden under an abuse of discretion standard.  His position is not supported by Wyoming precedent, and we decline his invitation.  In Wyoming, there is no presumption in favor of shared custody.  Rather, courts should consider the custody arrangement that is in the children's best interest:

> In *Bruegman v. Bruegman*, we reversed our long-standing precedent that shared custody was disfavored.  2018 WY 49, ¶ 16, 417 P.3d 157, 164 (Wyo. 2018).  We held, "there is no presumption that shared custody is contrary to the best interests of the children and shared custody should be considered *on an equal footing* with other forms of custody." *Id.* (emphasis added).  .  .  .  "Rather than applying any

---

not dispute because circumstances had changed post-separation, and implies the court should not have counted those absences against him.  The district court assessed this evidence under the first factor—the quality of each child's relationship with each parent.  It noted Father's extensive work hours but recognized his stated intent to reduce them.  It also weighed Mother's role as primary caregiver since birth, the parties' differing discipline approaches (encouraging Father to consider the children's ages), and video evidence of CJS resisting time with Father.  The court did not rely solely on Father's absences.  We find no abuse of discretion in concluding this factor favored Mother.

presumption in favor of a particular form of custody, we focus on the best interests of the child. We therefore consider only whether this custody arrangement is in the child's best interest." *Martin v. Hart*, 2018 WY 123, ¶ 19, 429 P.3d 56, 63 (Wyo. 2018) (internal citation omitted).

*Castellow v. Pettengill*, 2021 WY 88, ¶ 13, 492 P.3d 894, 899–900 (Wyo. 2021). The district court was required to weigh the best interests of the children to determine the appropriate custody and visitation schedule. It did so here.

## *CONCLUSION*

[¶28] The district court did not violate Father's fundamental constitutional right to associate with his children, and it did not abuse its discretion when it did not order equal parenting time. We affirm.