# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 2

**OCTOBER TERM, A.D. 2023**

**January 10, 2024**

| | |
|---|---|
| TODD ANDREW DOMENICO, | |
| Appellant (Defendant), | |
| v. | S-23-0080, S-23-0106 |
| JOSIE DANIEL f/k/a JOSIE DANIEL DOMENICO, | |
| Appellee (Plaintiff). | |
| | |
| JOSIE DANIEL f/k/a JOSIE DANIEL DOMENICO, | |
| Appellant (Plaintiff), | |
| v. | S-23-0081 |
| TODD ANDREW DOMENICO, | |
| Appellee (Defendant). | |

*Appeal from the District Court of Teton County*
*The Honorable Kate G. McKay, Judge*

*Representing Todd Andrew Domenico:*
Anna Reeves Olson, Long Reimer Winegar, LLP, Casper, Wyoming; Elizabeth Greenwood and Inga L. Parsons, of Counsel, Greenwood Law, LLC, Pinedale, Wyoming. Argument by Ms. Olson.

*Representing Josie Daniel:*
Christopher J. King, Apex Legal, P.C., Worland, Wyoming. Argument by Mr. King.

*Guardian ad Litem:*
No appearance.

**Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.**

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]   Todd Andrew Domenico (Father) and Josie Daniel (Mother) divorced on April 9, 2018.   The Decree of Divorce (Decree) granted joint legal custody of the parties' two children to Father and Mother and primary physical custody to Father.   In 2020, Mother filed for a modification of the Decree requesting primary physical custody of the children. After a trial, the district court continued primary physical custody with Father and increased Mother's visitation.   Father and Mother filed cross-appeals.   We reverse in part and remand for further proceedings.

## ISSUES

[¶2]   Mother and Father, while advocating different outcomes, raise some of the same issues and each raises separate issues.   We reorganize and rephrase these issues as follows:

> 1.   Did the district court abuse its discretion when it denied a W.R.C.P. 35 psychological evaluation of Mother and prohibited inquiry into Mother's mental health?
>
> 2.   Did the district court fail to make sufficient findings of fact to support its custody and visitation determinations under W.R.C.P. 52?
>
>> a.   Did the district court err in failing to award Mother primary physical custody or a shared custody arrangement?
>>
>> b.   Did the district court err in failing to allocate visitation for the children's birthdays; extending Mother's summer visitation for two weeks with no weekend visitation for Father; and removing the requirement that the parents provide qualified caregivers for WGD?
>
> 3.   Did the district court abuse its discretion in failing to designate one parent as a final decision-maker on issues of the children's welfare, especially medical decision-making?
>
> 4.   Did the district court violate Mother's fundamental right to parent when it prohibited Mother from obtaining a psychological evaluation of her children?

1

5.     Did the district court abuse its discretion when it refused to consider allegations of Mother's psychological abuse of one child after the evidence closed?

*FACTS AND PROCEDURAL HISTORY*

[¶3]    Mother and Father have two children, WGD (born in 2007) and SMD (born in 2011).  WGD is severely autistic and requires specialized care.  In 2018, after lengthy, hostile litigation, the district court awarded Father and Mother joint legal custody of the children and gave primary physical custody to Father.  In the Decree, the district court found that Father had been the children's primary caregiver in a stable home environment since 2013 and that Mother struggled with her development as a parent because of opiate addiction and mental health issues.  She was awarded supervised visitation every other weekend, Wednesday evening visitation, and four weeks during the summer vacation.  The Decree placed conditions on Mother's visitation.  Some related to the care of the children, and others addressed Mother's rehabilitation.

[¶4]    The Decree required qualified caregivers for WGD.  Specifically, the court ordered:

> Mother shall provide [Applied Behavior Analysis (ABA)] therapy in her home for WGD during her periods of responsibility as recommended by WGD's therapists, and Mother shall employ assistant(s) to assist her with WGD's care.  The parties shall cooperate in facilitating SMD's participation in any agreed-upon activity, regardless of which parent SMD is with during those activities.

[¶5]    In 2020, after completing the rehabilitative conditions, Mother filed a Motion to Modify Custody, Visitation, and Child Support.  She originally sought primary physical custody of the children but later added an alternative request for a shared custody arrangement.

[¶6]    Prior to trial, Mother filed her Expert Witness Designation.  Mother's designation named Dr. Amanda Turlington, a licensed psychologist, as a retained expert.  According to the designation, Mother retained Dr. Turlington to conduct psychological examinations on both children "to determine the predicted effects on each child of a modification to the current custody and visitation arrangement, as well as other factors."  The designation asserted the evaluations were scheduled for "early March" and that the designation would be supplemented when a report was available.  Father and the guardian ad litem (GAL) first learned of Mother's proposed psychological evaluation of the children from the Expert Witness Designation.  Father filed a motion to strike Mother's expert and prohibit the evaluation of the children.

2

[¶7]   Father based his objection on two arguments.  First, Mother's designation failed under W.R.C.P. 26(a)(2)(B)(i) and (ii).  Rule 26 in relevant part requires that the disclosure of a witness retained or specially employed to provide expert testimony must be accompanied by a written report.  The written report must contain, among other things, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them[.]"  Second, Mother failed to seek court approval for an evaluation of the children under W.R.C.P. 35.

[¶8]   After finding that Mother had failed to submit the required information or show good cause for the evaluation, the district court granted Father's motion.  It prohibited a psychological evaluation of the children and struck the witness.

[¶9]   The proceedings were bifurcated with the initial hearing limited to the question of whether there had been a material change of circumstances (First Phase: Material Change of Circumstances or Change of Circumstances Trial).  Once the district court found a material change of circumstances, the case proceeded to trial on modification of custody and visitation (Second Phase: Modification of Custody and Visitation or Custody Modification Trial).

## A.    First Phase: Material Change of Circumstances

[¶10]  At the July 2021 Change of Circumstance Trial, Mother presented the testimony of Dr. Sadie Cole Monaghan.[1]  Dr. Monaghan conducted a psychological evaluation of Mother on April 16, 2018, followed by weekly individual therapy sessions with Mother which continued through the time of the trial.  Dr. Monaghan testified that Mother had shown significant improvement in her parenting skills and mental health issues.  Mother also called her primary substance abuse therapist, Anne Ellingson.  Ms. Ellingson's participation in Mother's treatment began shortly after the divorce was filed in 2017 and continued until 2019.  In March 2019, she released Mother from further drug rehabilitation treatment but recommended continued mental health treatment.  Two caregivers who worked with WGD in Mother's home testified the children had a close and loving relationship with Mother.  Sara Devon Viehman, Mother's friend and coworker, testified about Mother's likely success in her new job, her personal improvement, and her close relationship with the children.

[¶11]  The district court found a material change of circumstance as follows:

> It was unequivocally established at trial that Mother has made vast improvements in personal development and her ability to parent since the time of the Decree in 2018.  Mother struggled

---

[1] During these proceedings, Dr. Monaghan changed her name to Dr. Cole and is referred to by that name later in the record.

3

with addiction. She is now well into recovery. She was subject to a variety of treatment and testing requirements. She has met those benchmarks and completed treatment. She was unemployed. She is now employed. She rented a home. She now owns a home. She was faced with a large volume of conditions for supervised and unsupervised visitation. She has complied with those conditions now for a long period and transitioned some time ago to unsupervised visitation. She had health issues and physical limitations. Those limitations have resolved. It is uncontested that Mother now thrives. Mother should be commended for her achievements.

It is also not contested that Father has maintained as a parent since the entry of the Decree. His life has not been stagnant, however. Changes in his life include the addition of a new partner who now lives in the home. That partner's daughter also resides at Father's home. The Court heard testimony that the parties' children continue to do well in the new environment at Father's house.

Thus, this is not a case where the custodial parent has diminished or remained stagnant. Both parents now appear to be on a more even footing as parents when compared to the circumstances at the time of trial.

## B. Motions Prior to Second Phase: Modification of Custody and Visitation Trial

[¶12]   After the district court's ruling on the Material Change of Circumstances Trial but prior to the Custody Modification Trial, the parties filed numerous motions—Father's Motion to Dismiss Petition or Alternative to Strike [Mother's] Experts[2] and for Sanctions (Motion to Strike); the GAL's Motion for an Order Requiring [Mother] to Obtain a Psychological Evaluation Pursuant to W.R.C.P. 35 (Rule 35 Motion); Mother's Expedited Motion for Order Regarding Medical Decision-Making Concerning COVID-19 Vaccination for the Minor Children; Father's Motion for Full Medical Authority to Make Medical Decisions for the Minor Children; and Mother's Expedited Motion for Order Permitting [Mother] to Make Medical Appointment for WGD.

---

[2] Mother's experts were Dr. Anthony (physician), Dr. Monaghan (psychologist), and Dr. Collins (psychiatrist).

4

### 1. Motion to Strike

[¶13]  Father based his Motion to Strike on Mother's failure to comply with discovery.[3] He cited many instances where Mother failed to comply with discovery requests entirely, provided only partial responses, or submitted redacted medical records prior to depositions. Mother objected to the Motion to Strike asserting that any discovery failures did not prejudice Father.

[¶14]  After a hearing on the matter, the district court found the discovery violations prejudiced Father and the GAL.  The district court struck Mother's witnesses from testifying at the Custody Modification Trial, stating that "[i]f this [was] not a best interests situation, [the] Court would strongly consider . . . dismissal given the inappropriate behavior."

### 2. Rule 35 Motion[4]

[¶15]  In a Rule 35 Motion, the GAL asserted Mother's mental health, as it relates to parental fitness and competency, continued to be at issue in the Custody Modification Trial. The GAL claimed there was good cause to conduct a second evaluation as the original evaluation, conducted by Dr. Monaghan, was not based on objective criteria because

---

[3] At this juncture in the proceedings, the district court judge assigned to the case retired.  A different district court judge assumed responsibility for the proceedings on January 11, 2022.

[4] W.R.C.P. 35(a) provides:

> (a)  *Order for an Examination.—*
> (1)  In General.—The court where the action is pending may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner.  *The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.*
> (2)  Motion and Notice; Contents of the Order.—The order:
> (A)  may be made only on motion for good cause and on notice to all parties and the person to be examined; and
> (B)  must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

(Emphasis added.)  W.R.C.P. 7(b) provides the requirements for presenting a motion to the court:

> (b)  *Motions and Other Papers.—*
> (1)  In General.—A request for a court order must be made by motion.  The motion must:
> (A)  be in writing unless made during a hearing or trial;
> (B)  state with particularity the grounds for seeking the order; and
> (C)  state the relief sought.

Mother had not disclosed material information to Dr. Monaghan about her past mental health treatment. The GAL asserted Dr. Monaghan, Mother's counselor, was not a neutral witness and given the parties' current dispute regarding the veracity and reliability of Mother's medical records, a comprehensive psychological evaluation by a neutral, third party was required. The GAL proposed the name of an independent expert who could complete the evaluation and report in time to allow the trial schedule to proceed without change. Father separately joined GAL's motion, claiming Mother's mental condition as it relates to her parenting ability was in controversy. Mother objected, arguing the GAL did not establish good cause to conduct an evaluation. Mother further objected to the proposed neutral third-party expert.

[¶16] The district court denied the GAL's Rule 35 Motion finding:

> 1. Under Wyo. R. Civ. Proc. 35(a), [Mother's] mental and physical condition are placed in issue in this modification action, but there is not good cause to order a psychological evaluation of [Mother] at this time.
>
> 2. The Court realizes that the discovery of redactions to records and the late ability to take the deposition of some of the experts may have interfered with an ability to think through whether to request . . . an independent psychological evaluation be conducted, but the hearing on the first half of the statute for modification occurred eight months ago, although the Court acknowledges that the GAL's Motion . . . was made in December.
>
> 3. The Court does not find that the GAL's Motion . . . is calculated to assist the Court in touching on the best interests of the children to determine whether any modification of the parties' Decree needs to be made.
>
> 4. It is [Mother's] burden to come forward to show that a material change existed and to show that whatever modification she seeks is in the best interests of the children, considering all the other options about the best interests of the children for the Court to examine. That includes the custodial arrangement for many years and the stability or instability of the children in their environment and under their schedule, which the Court would expect to hear testimony and evidence regarding, rather than focusing on the reliability of opinions of experts who, for the most part, the Court has stricken that

6

[Mother] intended to call about her psychological and physical situation on how those may have affected the children.

> 5.      The focus should be on the best interests of the children, not on [Mother], but it is [Mother's] burden to show that her proposal to modify the Decree is in the best interests of the children overall.

### 3. Mother's Motion for Medical Decision-Making

[¶17]  Mother filed an Expedited Motion for Order Regarding Medical Decision-Making Concerning COVID-19 Vaccination for the Minor Children.  The motion stated that Mother had agreed to have WGD receive the vaccination but objected to the vaccination of SMD due to the "unknowns that remain surrounding the vaccine."  Mother requested an order temporarily restraining the parties from vaccinating SMD.

### 4. Father's Motion for Medical Decision-Making

[¶18]  Father filed a reply and a Motion for Full Medical Authority to Make Medical Decisions for the Minor Children.  Father requested that Mother's motion be denied and sought a hearing on his motion for sole medical authority.  He asserted the parties' discussions regarding the children's medical care had been unproductive for months.  They were unable to agree on appropriate medications for WGD or on a foot operation ultimately intended to prevent WGD from being confined to a wheelchair.  The GAL also responded supporting the doctor's recommendation that the children receive a COVID-19 vaccination.[5]

[¶19]  Without a hearing, the district court denied the parties' motions on medical decision-making.  It found the parties' motions attempted to modify the original Decree without affording the other parent due process of law and without providing admissible evidence in support of the motions.

### 5. Expedited Motion for Order Permitting [Mother] to Make Medical Appointment

[¶20] Several months later, Mother filed an Expedited Motion for Order Permitting [Mother] to Make Medical Appointment for WGD.  Mother alleged WGD had been taking Adderall since late 2021 but had not been diagnosed with attention deficit disorder (ADD),

---

[5] Based on the number and tenor of the motions being filed, on January 26, 2022, the district court issued a Case Requirements Order under Rule 801 of the Uniform Rules for District Courts (Case Requirements Order) setting conduct requirements for counsel during litigation.  It also issued an Order Requiring Counsels' Immediate Compliance which stated because the parties were not complying with the Case Requirements Order, any further violation would result in sanctions.

attention deficit hyperactivity disorder (ADHD), or any similar disorder. She asserted WGD's behavior had become more aggressive since taking the drug, and her consent to his continued use of the medicine was conditioned on her ability to take him to a psychiatrist to determine whether the drug was suitable. Mother had made an appointment, but it was postponed due to Father's disagreement. Mother requested an order permitting her to take WGD to an appointment.

[¶21] Father objected, claiming WGD's current medical providers prescribed the medication and neutral third parties such as school personnel found its effects on WGD helpful. In addition, Father argued WGD's severe autism made it unlikely that such an appointment would result in productive diagnostic information, and that it was unnecessary, potentially confusing, and traumatic for WGD. Father asserted that the parties' disagreements over WGD's other medications and the recommended surgical procedures for WGD's feet should take precedence over any psychiatric evaluation.

[¶22] After hearing argument, the district court denied Mother's motion.

## C.     Second Phase: Modification of Custody and Visitation

[¶23] The Custody Modification Trial began on August 31, 2022. Prior to trial, Father filed a Request for Written Findings Pursuant to Rule 52(a)(1)(A) (Rule 52). After three days of testimony and evidence, the trial was continued for a fourth day and completed on October 20, 2022. The issues at trial were custody, visitation, and modification of the decision-making authority of the parents.

[¶24] After trial, but before the district court entered its Final Order[6] on January 4, 2023, the GAL filed an Emergency Motion to Suspend [Mother's] Visitation Until Further Order based on events that occurred during Mother's December visitation. The GAL later supplemented the motion with written reports from police officers, the hospital counselor, and school personnel. Mother claimed SMD was experiencing suicidal ideation and over the course of three days took SMD to school officials, the police department, and the emergency room. None of the entities found Mother's reports of SMD's suicidal thinking credible. The district court did not separately rule on the GAL's motion but dismissed it in its Final Order.

[¶25] The district court issued a Final Order on January 4, 2023. The order did not modify custody. Mother and Father continue to have joint legal custody of the children with Father

---

[6] On January 3, 2023, the district court issued an order entitled Trial Order Regarding Best Interests Modification of Decree of Divorce. There were two subsequent orders—Amended Trial Order Nunc Pro Tunc filed January 3, 2023, and Second Amended Trial Order Nunc Pro Tunc filed January 4, 2023 (Final Order).

as the primary physical custodian.[7] The district court addressed but did not modify the parties' decision-making authority, stating:

> Neither party shall have the right to make a decision over the view or decision of the other parent if the parties are unable to make any major joint decisions regarding their children's welfare, education, non-emergency healthcare, discipline, and religious training.

[¶26] The summer visitation schedule was modified. Mother's summer visitation increased from four to six consecutive weeks. The following provisions of the Decree were vacated:

> 12.     All references in the Decree requiring co-parenting counseling or use of a parent coordinator[;]
>
> 13.     All references in the Decree requiring that any party must provide qualified assistants, therapists, caregivers, supervisors, or specialized therapists, including ABA therapy and assistance, for WGD[;]
>
> 14.     All references in the Decree preventing [Mother] from driving or operating a vehicle with WGD as a passenger without another adult person, a qualified assistant, a therapist, a caregiver, a supervisor, or a specialized therapist being present[.]

---

[7] On appeal, Mother claims the judgments entered by District Court Judge Marvin Tyler were void ab initio because they were not drafted or signed by a sitting district court judge with jurisdiction. Judge Tyler retired effective January 2, 2023. The original Trial Order Regarding Best Interests was signed by Judge Tyler on December 30, 2022, and filed on January 3, 2023. The Amended Trial Order Nunc Pro Tunc was signed by Judge Tyler on January 1, 2023, and filed on January 3, 2023. The Second Amended Trial Order Nunc Pro Tunc was signed by Judge McKay on January 4, 2023, and filed on January 4, 2023. Even if we disregard the fact that the original Trial Order Regarding Best Interests and the Amended Trial Order Nunc Pro Tunc were signed by Judge Tyler prior to his retirement, and the subsequent amended order only corrected clerical errors, there is no jurisdictional issue here.

Subject matter jurisdiction resides with the court, not the judge. *See Fleet v. Guyette*, 2020 WY 78, ¶ 15, 466 P.3d 812, 817–18 (Wyo. 2020) ("The existence or non-existence of a court's subject matter jurisdiction is a question of law that we review de novo. Subject matter jurisdiction is 'the power to hear and determine the matter in controversy between the parties.' A district court's subject matter jurisdiction is invoked with the filing of a pleading 'stating a case belonging to a general class over which the authority of the court extends.'" (citations omitted)); W.R.C.P. 60(a) ("The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice."). The Second Amended Trial Order, appealed here, was entered by the then-presiding judge, Judge McKay, on January 4, 2023, the day after she took office.

9

[¶27]  Both Mother and Father appeal, arguing the district court failed to provide sufficient reference to the record to support its conclusions and abused its discretion when, among other things, it failed to designate a final decision-maker to undo the impasse preventing resolution of WGD's health issues.  Additional facts will be addressed as relevant to the discussion of the parties' issues.

### STANDARD OF REVIEW

[¶28]  "Child custody and visitation are within the sound discretion of the trial court." *Castellow v. Pettengill*, 2021 WY 88, ¶ 7, 492 P.3d 894, 897 (Wyo. 2021) (citing *Bruce v. Bruce*, 2021 WY 38, ¶ 12, 482 P.3d 328, 332 (Wyo. 2021) (quoting *Edwards v. Edwards*, 2020 WY 35, ¶ 10, 459 P.3d 448, 450 (Wyo. 2020))).  "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Evans v. Sharpe*, 2023 WY 55, ¶ 25, 530 P.3d 298, 307 (Wyo. 2023) (quoting *Johnson v. Clifford*, 2018 WY 59, ¶ 8, 418 P.3d 819, 822 (Wyo. 2018)).  "A district court does not abuse its discretion if it could reasonably conclude as it did." *Sears v. Sears*, 2021 WY 20, ¶ 13, 479 P.3d 767, 772 (Wyo. 2021) (quoting *Johnson*, ¶ 8, 418 P.3d at 822).

[¶29]  Judicial discretion is not absolute:

> Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.

*Ianelli v. Camino*, 2019 WY 67, ¶ 21, 444 P.3d 61, 66–67 (Wyo. 2019) (quoting *Love v. Love*, 851 P.2d 1283, 1291 (Wyo. 1993) (quoting *Vanasse v. Ramsay*, 847 P.2d 993, 996 (Wyo. 1993))).

[¶30]  We review the record to determine if sufficient evidence supports "the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party." *Bruce*, ¶ 12, 482 P.3d at 332 (quoting *Edwards*, ¶ 10, 459 P.3d at 450).  "[I]n every case, the record must support the district court's determination that the modification is in the children's best interests through 'the proceeding transcripts, by opinion letter, or as findings in the written order' to allow appellate review." *Ianelli*, ¶ 21, 444 P.3d at 66–67 (quoting *Booth v. Booth*, 2019 WY 5, ¶ 22, 432 P.3d 902, 910 (Wyo. 2019) (quoting *Jackson v. Jackson*, 2004 WY 99, ¶ 15, 96 P.3d 21, 26 (Wyo. 2004))).  "We review the district court's conclusions of law de novo." *Castellow*, ¶ 7, 492 P.3d at 897 (citing *Meiners v. Meiners*, 2019 WY 39, ¶ 8, 438 P.3d 1260, 1266 (Wyo. 2019)).

## DISCUSSION

### I.   *The district court abused its discretion when it denied a Rule 35 psychological evaluation of Mother and prohibited inquiry into Mother's mental health during the Second Phase of trial.*

[¶31]   Father claims the district court erred when it denied the GAL's motion for a Rule 35[8] evaluation and found the facts surrounding Mother's mental health were irrelevant because the Custody Modification Trial would only focus on the "best interests of the children, not [Mother]."   He also argues the district court abused its discretion when it denied him the opportunity to present evidence related to Mother's current mental health by prohibiting the introduction of evidence grounded in the records of Mother's stricken experts.

[¶32]   In custody cases, a child's best interests are paramount, and the district court is required to consider "[t]he current physical and mental ability of each parent to care for each child."   Wyo. Stat. Ann. § 20-2-201(ix).

[¶33]   Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."   W.R.E. 401; *Stevens v. Anesthesiology Consultants of Cheyenne, LLC*, 2018 WY 45, ¶ 47, 415 P.3d 1270, 1286 (Wyo. 2018).

[¶34] Although a custody determination does not create an automatic right to a psychological evaluation, good cause may exist to compel a psychological evaluation when there are "verified allegations that the parent in question is having mental problems that could substantially impact his or her ability to properly raise children." *Wade v. Wade*, 124 So. 3d 369, 375 (Fla. Dist. Ct. App. 2013) (citing *In re G.D.*, 870 So. 2d 235, 238 (Fla. Dist. Ct. App. 2004) (a parent's mental state is not "at issue" until there are pertinent allegations of mental insufficiency)).

---

[8] Father has standing to appeal denial of the GAL's Rule 35 Motion.  W.R.C.P. 10(c) provides:

> (c)      *Adoption by Reference; Exhibits.*—A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.  A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.

Here the GAL filed a Rule 35 Motion, Father joined this motion by a separate written pleading where he specifically adopted the history and grounds of the GAL's motion and separately asked for relief. Father's joinder complied with the requirements of Rule 7.  *Cf.*, *In re Est. of Smith*, 555 N.E.2d 1111, 1114 (Ill. App. Ct. 1990) ("Lifecare does not have standing to pursue an appeal of this portion of the circuit court's ruling, because the motion was not Lifecare's but was the executor's, and Lifecare did not join in the motion."); *Goodman v. Stancell*, 368 N.Y.S.2d 274, 275 (App. Div. 1975) (Bank did not join in the motion made by defendant Stancell and has no standing to appeal from the denial of defendant Stancell's motion.).

[¶35] The record contains facts and allegations that would support Father's contention that Mother's mental health could substantially impact her ability to properly supervise the children. These include the GAL's claims that the original evaluation, conducted by Dr. Monaghan, was not based on objective criteria, that Mother had failed to disclose material information about her past mental health treatment to Dr. Monaghan, and the parties' dispute over the veracity and reliability of Mother's medical records.

[¶36] Mother's mental health is directly relevant to whether a change in visitation is in the children's best interest. Mother's motion for modification was based on her mental health improvement over the time since the divorce decree and relied, in large part, on Dr. Monaghan's testimony which was stricken from the Custody Modification Trial. The district court erred when it found Mother's mental health was not relevant to the best interests of the children. On remand, a mental health evaluation should be ordered and appropriate mental health evidence admitted.

## II. The district court's Rule 52(a)(1)(A) findings of fact are sufficient as to custody but insufficient to support its visitation determinations.

[¶37] Both parties claim the district court failed to comply with Father's Rule 52 request for specific findings of fact as they pertained to the district court's final decisions on child custody and visitation. They point specifically to the district court's decisions to continue joint legal custody of Mother and Father, with primary physical custody to Father, and the refusal to award either party final decision-making authority. Father separately asserts the district court failed to comply with his Rule 52 request related to its decision to modify visitation and removal of the requirement for qualified caregivers for WGD. To determine sufficient compliance with the requirements of Rule 52, we must look to the rule's intent and apply the rule to the factual findings and conclusions disputed by the parties.

## A. Rule 52(a)(1)(A)

[¶38] Wyoming Rule of Civil Procedure 52(a)(1)(A) provides:

> (a) *General and Special Findings by Court.—*
>
> (1) Trials by the Court or Advisory Jury.— Upon the trial of questions of fact by the court, or with an advisory jury, it shall not be necessary for the court to state its findings, except generally for the plaintiff or defendant. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56 or any other motion except as provided in Rule 52(c).

(A) Requests for Written Findings.— If one of the parties requests it before the introduction of any evidence, with the view of excepting to the decision of the court upon the questions of law involved in the trial, the court shall state in writing its special findings of fact separately from its conclusions of law[.]

W.R.C.P. 52(a)(1)(A).

[¶39] "The purpose of Rule 52(a) is 'to indicate the factual basis for the decision on the contested matters.'" *Castellow*, ¶ 10, 492 P.3d at 898 (quoting *O's Gold Seed Co. v. United Agri-Prods. Fin. Servs., Inc.*, 761 P.2d 673, 676 (Wyo. 1988)).

> To play fair, a trial judge relying on discretionary power should place on record the circumstances and factors that were crucial to his determination. He should spell out his reasons as well as he can so that counsel and the reviewing court will know and be in a position to evaluate the soundness of his decision.

*Id.* (quoting *Kimzey v. Kimzey*, 2020 WY 52, ¶ 38, 461 P.3d 1229, 1241 n.2 (Wyo. 2020)). The court's findings "do not need to be elaborate." *Id.* However, they do need to "be clear, specific and complete in concise language informing the appellate court of the underlying bases for the trial court's decision." *Id.* (quoting *O's Gold*, 761 P.2d at 676).

### 1. The District Court's Factual Conclusions and Reasonable Inferences

[¶40] The factual findings related to the district court's conclusion that a modification of the Decree was warranted are:

> 6) Both parties need to play an active, <u>mature</u> role in each of [the] children's lives.
>
> 7) As to the factor of the quality of the relationship each child has with each parent under Wyo. Stat. Ann. § 20-2-201(a)(i):
>
> The [Father] is, and has been, the primary caregiver for each of the children before entry of the Decree and thereafter under the terms of the Decree. He uses this role as a means of exerting control over [Mother's] ability to strengthen her relationship with the children. He and each child share a very strong, close, and loving relationship.

13

Certain provisions in the Decree regarding parenting time have stunted the quality of relationship which has existed between [Mother] and the children. Also, other provisions in the Decree have inhibited the quality of relationship [Mother] has with WGD (*e.g.*, requirements for caregivers, restrictions upon [Mother] to drive alone with WGD, etc.). Despite these barriers, [Mother] has a strong, loving relationship with WGD. She and SMD share a very strong, close, and loving relationship. The children truly seek to have a good quality relationship with [Mother].

The Court finds it is in the best interests of each child that each child have a close, strong, and loving relationship with each parent. The Court intends to modify the Decree to allow [Mother] and each child to improve a better quality relationship.

8) Regarding the factor as to the ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed pursuant to Wyo. Stat. Ann. § 20-2-201(a)(ii):

[Father] has provided adequate and appropriate care for each child throughout the time that each child has been in his primary physical custody and control. He and his girlfriend have lived together for several years. He and the children rely upon [Father's] girlfriend to provide care and supervision. [Father] has employed caregivers to assist in providing for WGD's special needs.

[Mother] is capable of providing adequate care for the children, however the Decree's stringent requirements for her to provide caregivers for WGD have become more onerous than necessary. The Court intends to modify the Decree in this respect.

9) As to the factor of the relevant competency and fitness of each parent under Wyo. Stat. Ann. § 20-2-201(a)(iii):

Both parents are generally fit and competent parents. [Father] has consistently challenged [Mother's] competency and fitness by relying upon testimony and evidence from the

14

divorce trial, suspicion, and conjecture despite the findings and conclusions in this Court's August 19, 2021, *Order After Trial on Material Change of Circumstances*.

10)    As to the factor of each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times under Wyo. Stat. Ann. § 20-2-201(a)(iv):

Both parties generally comply with the Decree on this issue.

11)    Regarding the factor of how the parents and each child can best maintain and strengthen a relationship with each other pursuant to Wyo. Stat. Ann. § 20-2-201(a)(v):

Quite simply, both parties need to recognize that their ability to co-parent, communicate, and cooperate are mandated to provide for the best interests of each child. Both parents lack the insight to do anything about this. The offender need only look no further than his or her mirror. The 2018 Decree implemented some processes for the parents to accomplish this, but instead they persist in widening the chasm. *See* **Matters Reviewed, Considered, and Disregarded**, *supra*.[9]

---

[9] Matters Reviewed, Considered, and Disregarded refers to a provision in the Final Order where the district court described the parameters of its review. There it affirmed it had considered "all of the matters of Record in this case pertaining to the second phase of trial" and the "admissible, credible, reliable, and relevant sworn testimony" and "evidence." It then generally addressed the matters it did not consider, saying:

At Trial, there was inadmissible evidence and testimony, hearsay testimony, and some speculation introduced, or attempted to be introduced, by the parties. No inadmissible evidence and testimony, hearsay testimony, or speculation were given any weight by the Court in reaching its decision(s), and no inadmissible evidence and testimony, hearsay testimony, or speculation proved or disproved any material fact in controversy. Moreover, the Court did not consider or rely upon any extraneous matter, including attachment, document, record, or submission which was not "admissible" and/or admitted at Trial.

Specifically, the district court said it:

disregarded [*Father's*] *Motion to Strike* [*Mother's*] *Reply Pleadings Filed on December 5, 2022, or, in the Alternative Provide* [*Father*] *10 Days to Respond to* [*Mother's*] *Pleadings and the Guardian Ad Litem's Motion to Strike* [*Mother's*] *Pleadings* because [Mother] bears the burden of proof

12)  As to the factor of how the parents and each child interact and communicate with each other and how such interaction and communication may be improved under Wyo. Stat. Ann. § 20-2-201(a)(vi):

Quite simply, both parties need to recognize that their ability to co-parent, communicate, and cooperate are mandated to provide for the best interests of each child.  Both parents lack the insight to do anything about this.  The offender need only look no further than his or her mirror.  The 2018 Decree implemented some processes for the parents to accomplish this, but instead they persist in widening the chasm.  *See* **Matters Reviewed, Considered, and Disregarded**, *supra*.  Both parties realize that they must cooperate and communicate to promote the best interests of each of their children, but until they resolve their personal disputes, the Court is skeptical regarding their acceptance of their need to do so constructively.

13)  As to the factor of the ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy under Wyo. Stat. Ann. § 20-2-201(a)(vii):

Quite simply, for years neither parent has been capable of demonstrating a willingness to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy.

14)  As to the factor of the geographic distance between the parents' residences under Wyo. Stat. Ann. § 20-2-201(a)(viii):

[Father] and the children reside in the Jackson area, approximately one mile apart.  The proximity of the parents to each other exacerbates their ability to carry on their personal disputes.

---

to show "that the modification [of the Decree] would be in the best interests of the children . . . ."

Other than the Motion to Strike, the district court does not refer to any evidence or testimony that it considered or declined.

16

15) Regarding the factor of the current physical and mental ability of each parent to care for each child pursuant to Wyo. Stat. Ann. § 20-2-201(a)(ix):

Each parent generally possesses the appropriate physical and mental ability to care for each child.

16) As to any other factors the court deems necessary and relevant under Wyo. Stat. Ann. § 20-2-201(a)(x):

*See* **Matters Reviewed, Considered, and Disregarded**,[10] *supra*.

17) The Court considered other factors the Court deems necessary and relevant, including but not limited to, whether the best interests of each of the parties' children, considering their special needs and conditions, would be adversely affected or promoted in approving a custody and a visitation arrangement in light of each parent's present circumstances and living arrangements.

18) The Court does not prefer one parent as a custodian solely because of gender.

19) Pursuant to Wyo. Stat. Ann. § 20-2-201(c), the Court must consider any evidence of child abuse as being contrary to the best interests of each child. Each party has raised the specter that the opposite parent has engaged in child abuse (particularly involving WGD). None of such claims proved the existence of child abuse under the preponderance-of-evidence standard. There is ample circumstantial evidence that both parents have engaged in emotional abuse of their children, particularly SMD, by embroiling them in this endless, high conflict litigation.

20) This record does not support a conclusion that a shared custody arrangement would promote stability in each child's environment and that it is in each child's best interests to fashion such a plan.

---

[10] *See supra* note 9.

[¶41] In *Castellow*, we found that "[t]he district court set forth the factors at Wyo. Stat. Ann. § 20-2-201(a) that courts are to consider when determining a custody arrangement in the child's best interest, but then failed to address them as they pertained to this case." *Castellow*, ¶ 12, 492 P.3d at 899. Here the district court's findings are lengthy, yet conclusory. Some of the district court's findings comply with Rule 52, other key findings do not. Many lack reference to the record and in some instances the record does not support them. The findings support the district court's decision on custody but are insufficient to support its decisions extending Mother's summer visitation, removing the requirement that the Mother provide qualified caregivers for WGD, and failing to designate one of the parents as a final decision-maker. We address the insufficient findings in detail.

[¶42] In finding 7, the district court provided no facts, and we can find none in the record, to support its conclusion that Father uses his role as primary caretaker "as a means of exerting control over [Mother's] ability to strengthen her relationship with the children." Similarly, we are not informed which provisions in the Decree unnecessarily "stunted the quality of relationship which has existed between [Mother] and the children." The district court's reference to the Decree's therapeutic requirements for WGD's caregivers does not explain how WGD's needs have changed, and we can find nothing in the record to support the district court's conclusion that this requirement should be vacated.

[¶43] Finding 8 details Father's appropriate care of the children since the time of the divorce and the children's close relationship to both parents. It also states that the Decree's "stringent requirements for [Mother] to provide caregivers for WGD" have become "more onerous than necessary." While the record supports Father's care of the children and their close relationship with both parents, it does not directly address Mother's burden in providing caregivers. The finding provides no basis for this conclusion, and we are left to speculate about the district court's reasons. In finding 9, the district court recites no facts to support its conclusion that Father relied solely on the divorce trial to challenge Mother's competency and fitness and the record contradicts this finding. As discussed in this opinion, Father challenged Mother's current competency by joining the GAL's Rule 35 Motion.

[¶44] Findings 11, 12, and 13 contain conclusions or admonishments relating to the continued failings of both parents regarding an inability to communicate and work together in the best interests of the children. Nothing in these paragraphs reveals how the district court weighed each parent's transgressions in reaching its modification decisions. In finding 17, the district court does not identify the "other factors" it "deem[ed] necessary and relevant" in reaching a decision in the best interests of the children, and we are unable to review these unidentified factors to determine whether they support the district court's decision or are relevant to the best interests of the children. In finding 19, the district court asserts, "[t]here is ample circumstantial evidence that both parents have engaged in emotional abuse of their children, particularly SMD, by embroiling them in this endless,

18

high conflict litigation." The finding lacks any citation to the record, and the record contains conflicting evidence on this question.

[¶45] Father claims the lack of a sufficient basis for the district court's conclusions requires this Court to remand the district court's Final Order. He specifically challenges the basis for the decisions on (1) joint decision-making, (2) modification of visitation, (3) vacating the requirement for qualified caregivers for WGD, and (4) extending Mother's summer visitation. Mother agrees that joint decision-making is unworkable and asserts the insufficient factual findings require a remand on the issue of primary physical custody or at least a shared custody arrangement. We address the district court's custody and visitation decisions here and separately address the issue of medical decision-making *infra* ¶¶ 54–62.

### a. Sufficient evidence supports the award of physical custody to Father.

[¶46] Mother argues that the lack of sufficient findings under Rule 52 prevents this Court from determining whether the district court abused its discretion when it denied primary physical custody to Mother. We disagree.

[¶47] On appeal, Mother did not argue that evidence introduced during trial demonstrated Father's ongoing care of the children was deficient nor did she refer to evidence which supports the conclusion that a major change in the physical custody of the children would be more beneficial for them.

[¶48] There are sufficient Rule 52 findings supported by the record to sustain the district court's determination that a change in physical custody was not warranted. The district court found Father has been the primary physical custodian of the children since before the Decree and has provided adequate and appropriate care for each child throughout the time that each child has been in his primary physical custody and control. While Mother has improved her parenting skills which, in turn, has improved her relationship with the children, "[o]ur task is simply to determine whether, examining the record in the light most favorable to the successful party, the district court could have reasonably concluded as it did." *Walker v. Walker*, 2013 WY 132, ¶ 21, 311 P.3d 170, 175–76 (Wyo. 2013) (quoting *Hanson v. Belveal*, 2012 WY 98, ¶ 13, 280 P.3d 1186, 1192 (Wyo. 2012)). On this issue, Father is the prevailing party.

[¶49] "In custody modification proceedings, the party seeking to modify custody carries the burden of establishing that a material change of circumstances affecting the child's welfare has occurred subsequent to the entry of the initial decree, and that the modification would be in the best interests of the child affected." *Kappen v. Kappen*, 2015 WY 3, ¶ 11, 341 P.3d 377, 381 (Wyo. 2015) (citing *Jackson*, ¶ 7, 96 P.3d at 23–24). Mother "cannot use W.R.C.P. 52(a) to challenge the district court's order on any and all grounds." *Pettengill v. Castellow*, 2022 WY 144, ¶ 21, 520 P.3d 105, 112 (Wyo. 2022). "If [s]he

disagreed with the outcome, [s]he should have separately argued why the district court abused its discretion by awarding [Father] primary physical custody, analyzing the evidence under the appropriate standard of review." *Id.*

[¶50] The Rule 52 findings related to physical custody are sufficient. The district court did not abuse its discretion when it determined Mother failed to meet her burden to demonstrate a change in physical custody would be in the best interests of the children.

> **b. The district court erred in failing to allocate a specific schedule for birthday visitations, in extending Mother's summer visitation for two weeks with no weekend visitation for Father, and in removing the requirement that Mother provides qualified caregivers for WGD.**

[¶51] Mother and Father assert the district court erred when it modified visitation requiring the parties to share the children's birthdays without providing any further guidance. Father asserts the district court's findings of fact are insufficient to support its decision that it is in the children's best interests to increase Mother's summer visitation without providing visitation for Father and in vacating the requirement that Mother provide qualified caregivers for WGD.

[¶52] The district court's primary duty in making custody and modification decisions is to serve the best interests of the children. *See Kimzey*, ¶ 18, 461 P.3d at 1236.

[¶53] The Rule 52 findings contain no facts in support of the district court's conclusions as they pertain to the modification of visitation and vacating the requirements for caregivers. For these reasons, on remand, visitation and the need for qualified caregivers must be reconsidered, and on reaching a decision, the district court must set forth sufficient findings of facts and conclusions of law in support of its decision pursuant to Rule 52.

### III. *The district court abused its discretion in failing to designate one parent as a final decision-maker on issues of the children's welfare, especially medical decisions.*

[¶54] Mother and Father both claim that the district court abused its discretion when it failed to resolve the impasse caused by their inability to reach an agreement regarding the children's welfare—especially medical care.

[¶55] The record contains abundant evidence of the parents' inability to agree on many questions related to the children. Their inability to agree on medical treatment is particularly harmful to the children, especially WGD. As an example, for over a year, WGD's doctors have concluded that his gait, which causes him to fall frequently and has caused him injury, requires extensive surgery. Mother continues to resist surgical intervention. WGD has yet to be treated for this problem.

20

[¶56] Mother asserts,

> The Court has basically put a stalemate in place that does not allow for either of the parents to understand what steps must be taken for medical care for their special needs child when they don't agree. The end result is that if it is non-emergency care then it may not happen and this would not be in the best interests of the minor child.

We agree.

[¶57] Wyo. Stat. Ann. § 20-2-201(d) provides:

> The court shall order custody in well defined terms to promote understanding and compliance by the parties. In determining custody a court shall not favor or disfavor any form of custody. Custody shall be crafted to promote the best interests of the children, and may include any combination of joint, shared or sole custody.

Wyo. Stat. Ann. § 20-2-201(d) (LexisNexis 2023).

[¶58] Here, the district court ordered:

> The Court believes that it is in the best interests of each child that the parties shall have joint legal custody of their minor children. Joint legal custody means that <u>both parents</u> shall share in the responsibility for making major decisions about their children's welfare, education, non-emergency healthcare, discipline, and religious training. <u>Neither party shall have the right to make a decision over the view or decision of the other parent if the parties are unable to make any major joint decisions regarding their children's welfare, education, non-emergency healthcare, discipline, and religious training</u>.

[¶59] Under Rule 52, the district court must spell out its reasons so that counsel and the reviewing court will be in a position to evaluate the soundness of its decision. Nothing in the district court's findings supports its conclusion that the children's best interests are served by its order on decision-making. Throughout these proceedings, the district court expressed its displeasure with the parents' failure to reach any agreement over the welfare of the children. The parties agree animosity exists and has existed since the inception of the divorce proceedings—a period of more than seven years.

[¶60]  Despite this evidence and the district court's well-documented skepticism as to the parties' ability to address these issues in the future, the district court refused to resolve the problem.  When two fit parents disagree, the court must provide a resolution to the dispute. *Mills v. Fleming*, 2017 ME 144, ¶¶ 7–10, 166 A.3d 1012, 1014–15.

[¶61]  We find the Maine Supreme Court's reasoning in *Mills* instructive.  There, Mother appealed the district court's decision to give Father the final authority to determine the children's participation in sports, claiming it violated her fundamental right to parent.  The Maine Supreme Court said:

> When fit parents, who are parenting separately, cannot agree on an aspect of their shared parenting responsibilities, and cannot agree on a nonlitigation-based method of resolving that dispute, the court must undertake its responsibility to adjudicate the facts and provide a resolution to the dispute.  Although a negotiated resolution by caring parents holds the potential for the best outcome for the children, the court must act when the parents cannot resolve their dispute.  Absent the court's availability for that dispute resolution, the uncertainty, discord, and continued stalemate between the parents would leave children, torn between those parents, in an untenable circumstance.  Simply put, a court order that allows one parent to make the decision on a disputed child-related issue does not violate the constitutional rights of either parent.

*Mills*, ¶ 10, 166 A.3d at 1015.  *See also Evans*, ¶¶ 31–34, 530 P.3d at 309–10 (approving modification requiring Mother to obtain recommendations from three medical professionals in the event she and Father cannot agree on a major surgery, and otherwise final decision-making authority for the children's healthcare resides with Mother subject to specific communication and consultation requirements).

[¶62]  The district court's Rule 52 findings do not explain the district court's decision, and we find no support for this disposition in the record.  We vacate the district court's Final Order as it relates to joint legal medical decision-making.  On remand, the district court must resolve the parties' medical decision-making stalemates.

### IV.    *The district court did not exceed its jurisdiction or violate Mother's fundamental right to parent when it prohibited Mother from obtaining a psychological evaluation of her children.*

[¶63]  Mother designated Dr. Turlington to conduct psychological examinations on both children and, without consulting Father, scheduled evaluations for "early March."  Father

claimed the designation ran afoul of both W.R.C.P. 26(a)(2)(B)[11] and 35(a). The district court granted Father's motion and ruled that the appropriate remedy was to exclude the witness and prohibit the psychological evaluation.

[¶64] Mother concedes the district court had jurisdiction to strike the witness and limit the evidence but argues the district court exceeded its jurisdiction and crossed a constitutional boundary by prohibiting Mother from obtaining a psychological examination of the children whether the expert testified or not. Mother cited *MBB v. ERW*, 2004 WY 134, ¶ 9, 100 P.3d 415, 418–19 (Wyo. 2004) ("It is cardinal with us that the custody, care and nurture of the child[ren] reside first in the parents . . . ." (quoting *Nulle v. Gillette-Campbell Cnty. Joint Powers Fire Bd.*, 797 P.2d 1171, 1174 (Wyo. 1990))). She claims the district court's order denied Mother her fundamental right to care for her children.[12]

[¶65] She also claims the district court's prohibition violated her constitutional due process right to present expert recommendations to the GAL, citing *KES v. CAT*, 2005 WY

---

[11] W.R.C.P. 26(a)(2)(B) provides:
> Disclosure of Expert Testimony.—
>
> . . . .
>
> (B) Witnesses Who Must Provide a Written Report.—Unless otherwise stipulated or ordered by the court, if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony, this disclosure must be accompanied by a written report prepared and signed by the witness or a disclosure signed by counsel for the party. The report must contain:
>> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>> (ii) the facts or data considered by the witness in forming them;
>> (iii) any exhibits that will be used to summarize or support them;
>> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>> (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and
>> (vi) a statement of the compensation to be paid for the study and testimony in the case.

W.R.C.P. 26(a)(2)(B).

[12] Mother also asserts the district court's later ruling on Mother's Expedited Motion for Order Regarding Medical Decision-Making and Father's Motion for Full Medical Authority to Make Medical Decisions for the Minor Children was a violation of her fundamental rights to parent. The district court denied both motions. The district court found the Decree did not provide one parent the ability to make a final decision regarding the health of the children over the protests of the other parent and held that a decision on this dispute prior to the trial would violate due process. The denial of the motions for medical authority was based on the Decree's award of joint legal custody where neither parent was given final decision-making authority.

23

29, ¶ 16, 107 P.3d 779, 784 (Wyo. 2005) ("One of the basic elements of due process is the right of each party to be apprised of all the evidence upon which an issue is to be decided, with the right to examine, explain, or rebut such evidence." (quoting *Matter of SAJ*, 942 P.2d 407, 410 (Wyo. 1997))).

[¶66]   The original Decree awarded Mother and Father joint legal custody and required the parties to consult with each other before executing a medical decision.  Mother has no fundamental or due process right to override the provisions of her Decree.

> A judgment respecting parental rights and responsibilities does not implicate a parent's fundamental right to parent unless it constitutes a state intrusion on that right. Such an intrusion may be found to exist when a judgment directly and substantially limits the parent's decision-making authority and delegates an aspect of parental rights and responsibilities to a third party.

*Mills*, ¶ 7, 166 A.3d at 1014 (citations omitted).  "Courts deciding parental rights matters are regularly called upon to resolve disputes when dedicated, loving, and fit parents are unable to reach agreement . . . . Court resolution of [the] dispute[] . . . involve[d] no state intrusion on the parties' right to parent." *Id.* ¶ 8, 166 A.3d at 1014–15.

[¶67]   Mother did not consult with Father before arranging for the evaluation of the children.  Mother's decision to schedule a psychological examination of the children without consulting Father was a direct violation of the Decree.  Mother's fundamental right to parent was not affected when the district court prevented Mother from conducting an evaluation for the purpose of securing evidence for trial.

## V.   *The district court abused its discretion when it refused to consider allegations of Mother's psychological abuse of one child after the evidence closed.*

[¶68]   Father claims the district court abused its discretion in failing to consider the GAL's Emergency Motion to Suspend [Mother's] Visitation Until Further Order filed after trial, but before the district court entered its Final Order.

[¶69]   This motion was predicated on events that began during Mother's visitation with SMD on Wednesday, December 7, 2022.  On December 8, 2022, Mother sent a text message to Father and the GAL stating SMD had expressed suicidal thoughts to Mother during their visit the previous evening (Wednesday).  Mother said she had shared this information with SMD's school principal.  The principal met with SMD and determined there was no threat of self-harm and notified both parents of this conclusion.

24

[¶70]  Dissatisfied with the school's response, on Saturday, December 10, during Mother's weekend visitation, she took SMD to the Jackson Police Department to report that SMD would be endangered if she returned to Father's home.  While in SMD's presence, Mother discussed her "personal history and experiences" with Father including allegations of physical and psychological abuse.  After an investigation of Mother's concerns, the case was closed for lack of cause.

[¶71]  Dissatisfied with the police response, on Sunday, December 11, 2022, Mother brought SMD to the emergency room for suicidal concerns, specifically, Mother alleged SMD would kill herself if she had to return to Father's home that evening.  After an evaluation by the doctor, an emergency assessment "related to the risk for harm to self and recommendations for safety planning" by the hospital on-call counselor, and a lengthy observation, hospital personnel documented their concerns that SMD had been coached to express suicidal ideation and discharged her to her Father.

[¶72]  In each of these interviews, Mother, in front of SMD, discussed Father's physical and mental abuse towards Mother (which had been litigated and found unsupported), Mother's own attempted suicide, and Mother's fear that Father was causing harm to SMD.

[¶73]  The district court denied the motion in its Second Amended Trial Order.  After discussing the parents' inability to communicate and chastising the parties for flooding the district court with numerous motions, the district court stated:

> Even after the Trial was completed and before the Court could make its determinations, the turmoil was further stoked with the *Guardian Ad Litem's Emergency Motion to Suspend Plaintiff's Visitation Until Further Order*, and the inevitable onslaught of Responses, Replies, and Supplements.  Needless to say, these inane pleas for court intervention are deemed automatically denied for reasons which have been previously explained to the attorneys[13] and which are well-known to them.  All of these filings and claims for relief are disregarded.

[¶74]  "We review the denial of a post-trial motion for abuse of discretion." *Aimone v. Aimone*, 2023 WY 43, ¶ 50, 529 P.3d 35, 48 (Wyo. 2023), *reh'g denied* (June 6, 2023) (citations omitted).  At the time the motion was filed, no final order had been entered, and no judicial determination which might be considered a final order had been made.  "[T]he district court was free to revise its [decision] prior to judgment, and could have heard the pre-judgment motion . . . ." *Parris v. Parris*, 2009 WY 44, ¶ 17, 204 P.3d 298, 303–04 (Wyo. 2009) (citing *Steranko v. Dunks*, 2009 WY 9, ¶ 6, 199 P.3d 1096, 1096–97 (Wyo.

---

[13] Prior to the district court's final ruling, it had warned the parties that any motion containing the words "Emergency" or "Expedited" or other words of urgency would "automatically be deemed DENIED."

2009); *Broadhead v. Broadhead*, 737 P.2d 731, 733 (Wyo. 1987)). The best interests of the children are paramount in making custody and visitation decisions. *Arnott v. Arnott*, 2012 WY 167, ¶ 31, 293 P.3d 440, 454 (Wyo. 2012).

[¶75] Upon review of the materials in the GAL's supplemental filing, we do not find the GAL's motion "inane" or that its purpose was to "stoke" the "turmoil." The GAL's supplemental information describes exigent circumstances calling into question SMD's health and safety during Mother's visitation. The district court abused its discretion in denying the GAL's post-trial motion without considering its merits. On remand, the district court should consider the merits and relevance of the GAL's motion.

## *CONCLUSION*

[¶76] The district court abused its discretion when it denied the GAL's motion for a Rule 35 examination, excluded evidence related to Mother's mental health, failed to designate a final decision-maker, and refused to consider the GAL's emergency motion. It did not abuse its discretion when it declined Mother's invitation to modify physical custody of the children, nor did it exceed its jurisdiction when it prohibited Mother from obtaining a psychological evaluation of the children. Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.